IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
November 1, 2011 Session at Nashville

**STATE OF TENNESSEE v. LONNIE CROSS**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Bradley County**
**No. 07-478      Amy Reedy, Judge**

**No. E2008-02792-SC-R11-CD - Filed March 9, 2012**

This appeal presents, among other issues, an issue regarding the application of the federal and state constitutional double jeopardy protections to a single prosecution for multiple offenses arising out of a high speed chase involving a motorist who was attempting to avoid arrest for driving on a revoked license. A Bradley County grand jury returned a seven-count indictment against the motorist. Following a jury trial, the motorist was convicted of five of the offenses and received an effective sentence of eight years. On appeal, the Court of Criminal Appeals upheld four of the motorist's convictions but, on its own motion, vacated the remaining conviction after determining that it violated the double jeopardy protections in the federal and state constitutions. *State v. Cross*, No. E2008-02792-CCA-R3-CD, 2010 WL 2432022, at *12 (Tenn. Crim. App. June 17, 2010). We granted both the State's and the motorist's applications for permission to appeal. In accordance with our opinion in *State v. Watkins*, ___ S.W.3d ___ (Tenn. 2012), released contemporaneously with this opinion, we find that the defendant's convictions do not run afoul of the double jeopardy protections in the federal and state constitutions. We also find that the motorist's conviction under count one of the indictment must be vacated because the trial court committed plain error in its instruction regarding the lesser-included offenses of that charge. With regard to the remaining convictions, we find that the evidence supports the motorist's convictions and that the sentences imposed by the trial court are not excessive. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal**
**Appeals Affirmed in Part; Reversed in Part; and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Attorney General and Reporter; William E. Young, Solicitor General; Gordon W. Smith and Joseph F. Whalen, Associate Solicitors General; John H. Bledsoe, Senior Counsel; and Matthew Bryant Haskell, Assistant Attorney General; Steven Bebb, District Attorney General; and Brooklyn Martin, Assistant District Attorney General, for the State of Tennessee.

Larry D. Wright, Cleveland, Tennessee, for Lonnie Cross.

Kathy Morante, Assistant District Attorney; William Crabtree, Assistant District Attorney; and Garland Erguden, Assistant District Attorney, for the Amicus Curiae Tennessee District Attorneys General Conference.

Stephen Ross Johnson and Wade V. Davies, Knoxville, Tennessee; Ann C. Short, Knoxville, Tennessee; and Aimee D. Solway, Nashville, Tennessee, for the Amicus Curiae Tennessee Association of Criminal Defense Lawyers.

**OPINION**

**I.**

On October 6, 2007, Lonnie Cross and his girlfriend, Wanda Moore, decided to spend the day lounging and swimming at Ms. Moore's swimming pool. Ms. Moore purchased some beer, and she and Mr. Cross put the beer on ice in a "cooler box" and then carried the cooler box down to the pool. Not long after they arrived at the pool, Mr. Cross's son-in-law telephoned to say that Mr. Cross's daughter and her children were at home and that they would like to go swimming. Even though his driver's license had been revoked, Mr. Cross decided to drive to his daughter's house because he "wanted [his] grandbabies to come there and have a good time swimming."

Mr. Cross took two cans of beer, got into a car, and set out for his daughter's house. While driving along Spring Place Road toward his daughter's house, Mr. Cross opened one of the cans of beer and, as he testified later, "took two sips out of it." At the same time, Bradley County Deputy Sheriff Travis Smith was driving along Spring Place Road in the opposite direction. He observed Mr. Cross approaching him at a high rate of speed. Using his radar speed gun, Deputy Smith ascertained that Mr. Cross was driving sixty-eight miles per hour in an area with a fifty-five mile per hour speed limit.

Deputy Smith turned around his police cruiser, activated his lights, and pursued Mr. Cross. Mr. Cross, as he testified later, "panicked" when he saw Deputy Smith turn his cruiser around and activate his lights. Rather than slowing down or stopping, Mr. Cross

threw the open can of beer on the floor of the car and increased his speed. Deputy Smith engaged his siren when Mr. Cross turned onto Keith Valley Road. At this point, Mr. Cross accelerated to speeds between eighty and ninety miles per hour along a road with a forty-five mile per hour speed limit.

While speeding down Keith Valley Road, Mr. Cross passed two other vehicles on blind curves in "no passing" zones. Eventually, Mr. Cross turned onto Union Road where the speed limit was thirty-five miles per hour and slowed his speed to approximately sixty miles per hour. Even though he had slowed down, Mr. Cross lost control of his car on a sharp curve and drove into a ditch. However, the car's momentum caused the car to bounce out of the ditch and across the road, where it came to a halt.

Using his cruiser's public address system, Deputy Smith ordered Mr. Cross to come to a complete stop and to get out of his car. Rather than complying, Mr. Cross escaped by driving his car toward Deputy Smith's cruiser, thereby forcing Deputy Smith to pull back in order to avoid a collision. With Deputy Smith following him, Mr. Cross drove back down Union Road and turned on a road that dead-ended in a gravel lot. Seemingly trapped again, Mr. Cross turned his car around and drove at Deputy Smith's cruiser. Deputy Smith again pulled his vehicle back in order to avoid being struck by Mr. Cross's car, enabling Mr. Cross to elude capture one more time.

While pursuing Mr. Cross, Deputy Smith had been in radio communication with Bradley County Deputy Sheriff Phillip Reagan. In an effort to stop Mr. Cross, Deputy Reagan placed "stop sticks"[1] on Keith Valley Road and deployed them when Mr. Cross drove by. Even though the right front tire of his car went flat, Mr. Cross continued to evade capture by driving on the rim.

With Deputy Smith still pursuing him, Mr. Cross turned onto Kincaid Road and then onto a long dirt driveway. Deputy Smith stopped his cruiser because his vision was obscured by the thick cloud of dust kicked up by Mr. Cross's car. When the dust settled, Deputy Smith saw that Mr. Cross had abandoned his car and was running across a field. Deputy Smith jumped out of his cruiser and ordered Mr. Cross to stop, but Mr. Cross kept running. Eventually, Mr. Cross stopped running and raised his hands. Deputy Smith caught up with Mr. Cross and ordered him repeatedly to lie on the ground. When Mr. Cross finally complied, Deputy Smith handcuffed him.

---

[1]Stop sticks are devices used by law enforcement officers to slow down or stop moving vehicles by puncturing their tires.

When Deputy Smith apprehended Mr. Cross, he smelled a strong odor of alcohol on Mr. Cross's breath. He also observed that Mr. Cross's speech was slurred and that his eyes were blurry and bloodshot. After Deputy Reagan arrived at the scene, the two deputies placed Mr. Cross in Deputy Smith's cruiser. In an effort to administer a breathalyser test to Mr. Cross, Deputy Smith began to read the language on the Tennessee Implied Consent Advisement form to him. Mr. Cross interrupted. He instructed Deputy Smith not to read the form to him and said "I'm not going to take any kind of test." After Mr. Cross refused to mark or sign the form, Deputy Smith marked the box stating "I refuse to submit to test or tests" and wrote the word "Refused" on the line for the arrestee's signature.

On December 5, 2007, a Bradley County grand jury returned a seven-count indictment against Mr. Cross. Count one charged Mr. Cross with committing aggravated assault in violation of Tenn. Code Ann. § 39-13-102 (2006) by using or displaying a deadly weapon – an automobile – in such a manner so as to intentionally or knowingly cause Deputy Smith to reasonably fear imminent bodily harm. Count two charged Mr. Cross with evading arrest in violation of Tenn. Code Ann. § 39-16-603 (2006) and doing so in a manner that created a risk of death or injury to innocent bystanders or third parties. Count three charged Mr. Cross with reckless endangerment in violation of Tenn. Code Ann. § 39-13-103 (2006) by putting others, including the two motorists he passed in "no passing" zones on blind curves, in imminent danger of death or serious bodily injury. Count four charged Mr. Cross with driving under the influence of an intoxicant in violation of Tenn. Code Ann. § 55-10-401 (2004). Count five alleged that the offense in count four was Mr. Cross's fourth driving under the influence offense. Count six charged Mr. Cross with driving on a revoked license in violation of Tenn. Code Ann. § 55-50-504 (Supp. 2007). Finally, count seven charged Mr. Cross with speeding in violation of Tenn. Code Ann. § 55-8-152 (Supp. 2007).

The case was tried to a Bradley County jury on March 19, 2008. Both Deputies Smith and Reagan testified for the prosecution, and Mr. Cross and Ms. Moore testified for the defense. The defense strategy appeared to concede the evading arrest, speeding, and driving on a revoked license charges but attempted to raise reasonable doubt regarding whether Mr. Cross had been driving under the influence and whether he had intentionally or knowingly caused Deputy Smith and others to reasonably be in fear of imminent bodily harm or had created a risk of serious bodily harm. The case went to the jury on six of the seven counts in the indictment.[2]

---

[2]When a defendant is facing a charge for a second or subsequent driving under the influence offense, the prior offenses must be alleged in the indictment. *State v. Sanders*, 735 S.W.2d 856 (Tenn. Crim. App. 1987). In addition, a charge for a second or subsequent driving under the influence offense requires a bifurcated proceeding. *State v. Nash*, 294 S.W.2d 541, 550-51 (Tenn. 2009); *State v. Sanders*, 735 S.W.2d

(continued...)

The defense strategy produced a mixed result. On count one, the jury acquitted Mr. Cross of aggravated assault but convicted him of the lesser included offense of reckless endangerment with a deadly weapon. The jury also acquitted Mr. Cross on count four of the original indictment – driving under the influence. However, the jury found Mr. Cross guilty of evading arrest while creating a risk to others (count two), reckless endangerment with a deadly weapon (count three), driving on a revoked license (count six), and speeding (count seven).

The trial court conducted a sentencing hearing on August 22, 2008. After hearing testimony and argument from both the State and the defense, the trial court sentenced Mr. Cross to eight years for evading arrest while creating a risk to others. The court also imposed a four-year sentence for Mr. Cross's convictions for reckless endangerment with a deadly weapon under counts one and three. Noting that Mr. Cross was a multiple offender, the trial court set his release eligibility for these sentences at thirty-five percent. In addition, the trial court imposed an eleven month and twenty-nine day sentence for Mr. Cross's conviction for driving on a revoked license and a sentence of thirty days probation for his speeding conviction. The trial court also determined that these sentences should run concurrently. Accordingly, Mr. Cross received an effective sentence of eight years.

Mr. Cross appealed to the Court of Criminal Appeals and raised three issues. First, he asserted that the evidence did not support his conviction under count one for evading arrest in violation of Tenn. Code Ann. § 39-16-603 because there was insufficient proof that his attempt to elude the deputies created a risk of death or injury to innocent bystanders or other third parties. Second, he insisted that the evidence was insufficient to sustain a conviction for reckless endangerment with a deadly weapon under count three for any person other than Deputy Smith. Third, he argued that the trial court's reliance on two of the three enhancement factors was erroneous and that the trial court erred by imposing an excessive sentence.

The Court of Criminal Appeals rejected Mr. Cross's sufficiency of the evidence arguments with regard to both his evading arrest conviction and his conviction under count three for reckless endangerment with a deadly weapon. *State v. Cross*, No. E2008-02792-CCA-R3-CD, 2010 WL 2432022, at *5-6 (Tenn. Crim. App. June 17, 2010).

---

[2](...continued)
856, 858 (Tenn. Crim. App. 1987). Accordingly, the trial court did not charge the jury in the guilt phase of the present proceeding regarding Mr. Cross's prior driving under the influence convictions listed in count five of the indictment. Had the jury found Mr. Cross guilty of the driving under the influence charge in count four of the indictment, the jury would then have been informed of Mr. Cross's prior convictions. Because the jury acquitted Mr. Cross of the driving under the influence charge in count four, it was unnecessary for the jury to consider count five.

In addition, the intermediate appellate court found that the trial court had erroneously relied on one enhancement factor[3] but that this error was harmless in light of the presence of other enhancing factors. *State v. Cross,* 2010 WL 2432022, at *11. The intermediate appellate court did not find that Mr. Cross's sentences were excessive.

On its own motion, the Court of Criminal Appeals addressed whether Mr. Cross's convictions for evading arrest (count two) and for reckless endangerment (count three) violated the protections against double jeopardy in the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Constitution of Tennessee. Applying the double jeopardy analysis adopted by this Court in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), the Court of Criminal Appeals determined that these two convictions constituted plain error in violation of Mr. Cross's constitutional protections against double jeopardy. Accordingly, the court remanded the case to the trial court with directions to vacate Mr. Cross's conviction for reckless endangerment (count three) and to "merge the conviction in count three into the evading arrest conviction in count two." *State v. Cross*, No. 2010 WL 2432022, at *10.

Mr. Cross filed a timely Tenn. R. App. P. 11 application for permission to appeal with this Court raising two issues – the adequacy of the evidence to support his convictions for felony evading arrest and felony reckless endangerment and the excessiveness of his sentence. The State likewise filed a timely Tenn. R. App. P. 11 application asserting that the Court of Criminal Appeals had erred by determining that the constitutional protections against double jeopardy barred Mr. Cross's convictions for felony evading arrest and felony reckless endangerment.

We granted both applications for permission to appeal, and, in addition to the issues raised in the Tenn. R. App. P. 11 applications, we directed the parties to address whether it was plain error to convict Mr. Cross of felony reckless endangerment in count one when that offense is not a lesser-included offense of the charged offense. Oral argument was held on May 25, 2011. On August 24, 2011, we directed Mr. Cross and the State to file supplemental briefs on the double jeopardy issue. The Court requested the parties address specific questions regarding whether the *State v. Denton* test is the proper approach to analyze double jeopardy issues in cases involving multiple offenses charged in a single proceeding. In that same order, we also expressly invited amicus briefing on these matters. This case along with the appeals in *State v. Watkins*, No. M2009-00348-CCA-R3-CD, 2010 WL 682506 (Tenn. Crim. App. Mar. 1 2010) and *State v. White*, No. M2009-00941-CCA-R3-CD, 2010 WL

---

[3]One of the advisory factors that may be considered in enhancing a defendant's sentence is that "the defendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10) (Supp. 2007).

1930951 (Tenn. Crim. App. May 12, 2010) were consolidated for reargument on November 1, 2011.

## II.

We turn first to the decision of the Court of Criminal Appeals that Mr. Cross's convictions for Class D felony evading arrest (count two) and Class E felony reckless endangerment (count three) violate the prohibitions against double jeopardy in the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Constitution of Tennessee. Our analysis of this issue tracks the analysis we adopt today in *State v. Watkins*, ___ S.W.3d ___ (Tenn. 2012).[4]

## A.

In *State v. Watkins*, we held that the threshold inquiry in double jeopardy cases of this sort should be the first step of the analysis employed by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). *State v. Watkins*, slip op. at 28. This inquiry requires the courts to determine whether the defendant's convictions arose from the same act or transaction. *See Blockburger v. United States*, 284 U.S. at 304. If the convictions do not arise from the same act or transaction, the federal and state constitutional prohibitions are not implicated.

As required by *State v. Watkins*, we have examined the charging instrument and the relevant statutes, and we have considered whether the charges arise from discrete acts or involve multiple victims. *See State v. Watkins*, slip op. at 29. The record provides two bases for concluding that Mr. Cross's double jeopardy claim survives threshold scrutiny. First, Mr. Cross's convictions arise from the same continuous act – his effort to avoid being apprehended on October 6, 2007. Second, even though there were a number of distinct potential victims in this case, the indictment did not separately identify or otherwise differentiate these victims. Instead, the charges in the indictment were framed as ones against the general public as a collective whole.[5] Accordingly, because his convictions arise

---

[4]*See State v. Watkins*, No. M2009-00348-SC-R11-CD, 2012 WL _____ (Tenn. Mar. 9, 2012).

[5]When permitted by the facts, the State may prosecute a defendant for criminal acts committed either against individual victims or against the public at large. In this regard, we have noted that

> [b]y naming "the public at large" in the indictment for reckless endangerment, the State chose to indict on behalf of a class of persons instead of on behalf of each victim of reckless endangerment. In connection with the July 29, 1999 chase, the State could have pursued

(continued...)

from a single act and do not involve multiple victims, Mr. Cross's double jeopardy claim survives our threshold inquiry.

**B.**

When a claimed double jeopardy violation survives the threshold *Blockburger* inquiry, the court must then determine whether the General Assembly intended to allow the offenses to be punished separately. *State v. Watkins*, slip op. at 30. The court makes this determination by examining statutory elements of the offenses in the abstract, rather than the particular facts of the case. *State v. Watkins*, slip op. at 14; *see also Iannelli v. United States*, 420 U.S. 770, 786 n.18 (1975); *Meads v. People,* 78 P.3d 290, 294 (Colo. 2003); *People v. Ream*, 750 N.W.2d 536, 545 (Mich. 2008); *State v. Close*, 623 P.2d 940, 950 (Mont. 1981); *Coleman v. Commonwealth*, 539 S.E.2d 732, 734 (Va. 2001); George C. Thomas III, *RICO Prosecutions and the Double Jeopardy/Multiple Punishment Problem*, 78 Nw. U. L. Rev. 1359, 1374 (1984). We concur with the majority view that an abstract analysis focusing on the statutory elements of the crimes for which the defendant has been convicted provides the best and most consistent method for ascertaining the General Assembly's intent with regard to multiple punishments in a single proceeding.

The offenses relevant to the double jeopardy analysis in this case are Class D felony evading arrest (count two) and Class E felony reckless endangerment (count three). In establishing the crime of Class D felony evading arrest, the General Assembly has provided that

> (b)(1) It is unlawful for any person, while operating a
> motor vehicle on any street, road, alley or highway in this state,
> to intentionally flee or attempt to elude any law enforcement

---

[5](...continued)
multiple indictments for reckless endangerment naming Officers Finchum and Jones, and motorist Noel Aihie as victims. By choosing to indict for a class of persons, the State is now prohibited from indicting for any additional offenses based upon the defendant's conduct at this time and place.

*State v. Payne,* 7 S.W.3d 25, 29 n.3 (Tenn. 1999). In this case, the State indicted Mr. Cross in count two for creating a risk of injury or death "to innocent bystanders or third parties." Similarly, count three of the indictment alleged that Mr. Cross "placed or may have placed another person in imminent danger of death or serious bodily injury." The State could have pursued multiple offenses for each of the different individuals who were put it jeopardy by Mr. Cross's conduct. It did not. Accordingly, as in *State v. Payne*, the State cannot charge Mr. Cross for offenses against the public at large and then attempt to convict him upon multiple individualized counts.

officer, after having received any signal from the officer to bring the vehicle to a stop.

. . .

(3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Tenn. Code Ann. § 39-16-603(b)(1), (3). For Class E felony reckless endangerment, the General Assembly has defined the offense as follows:

(a) A person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury.

(b) Reckless endangerment is a Class A misdemeanor; however, reckless endangerment committed with a deadly weapon is a Class E felony.

Tenn. Code Ann. § 39-13-103(a)-(b).[6]

To convict a defendant of Class D felony evading arrest, the State must prove, among other things, (1) that the defendant was operating a motor vehicle, (2) that this motor vehicle

---

[6]Effective January 1, 2012, the General Assembly amended the offense of reckless endangerment. The General Assembly has now provided that

(a) A person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury.

(b)(1) Reckless endangerment is a Class A misdemeanor;

(2) Reckless endangerment committed with a deadly weapon is a Class E felony;

(3) Reckless endangerment by discharging a firearm into a habitation, as defined under § 39-14-401(1), is a Class C felony, unless the habitation was unoccupied at the time of the offense, in which event it is a Class D felony.

Tenn. Code Ann. § 39-13-103 (Supp. 2011). Class E felony reckless endangerment, the offense upon which Mr. Cross was charged and convicted, remains unaffected by this legislative change.

was being operated "on any street, road, alley or highway in this state," (3) that the defendant intentionally fled or attempted to elude a law enforcement officer, and (4) that this intentional fleeing or attempting to elude occurred after the defendant received a signal from the officer to bring the vehicle to a stop. Tenn. Code Ann. § 39-16-603(b)(1). Class E felony reckless endangerment does not require the State to prove any of these elements of Class D felony evading arrest. *See* Tenn. Code Ann. § 39-13-103(a)-(b). Furthermore, to obtain a conviction for Class D felony evading arrest, the State must prove the existence of risk of death or injury to an "innocent bystander or other third parties" – in other words, to persons other than the defendant him or herself and the officer giving the signal to stop. Tenn. Code Ann. § 39-16-603(b)(3). However, Class E felony reckless endangerment simply requires proof of imminent danger of death or serious bodily harm to "another person." Tenn. Code Ann. § 39-13-103(a).

Similarly, Class E felony reckless endangerment requires proof that the reckless endangerment be "committed with a deadly weapon." Tenn. Code Ann. § 39-13-103(b). However, Class D felony evading arrest does not require the use of a deadly weapon. Likewise, Class E felony reckless endangerment requires that the defendant place another person "in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). However, a Class D felony evading arrest conviction requires only proof of the risk of "injury" that need not rise to the level of "serious bodily injury." *See* Tenn. Code Ann. § 39-16-603(b)(3). Thus, the State need not prove that the danger was to a person who was an innocent bystander or third party in order to prove the defendant guilty beyond a reasonable doubt of Class E felony reckless endangerment. *See* Tenn. Code Ann. § 39-13-103(a).

Our analysis of the statutory elements of the offenses of Class D felony evading arrest and Class E felony reckless endangerment prompts us to agree with the concession in Mr. Cross's brief and the conclusion of the Court of Criminal Appeals in many prior decisions[7] – including its decision in this case – that convictions for Class D felony evading arrest and Class E reckless endangerment committed with a deadly weapon do not constitute the same

---

[7]*State v. Cullop*, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *7 (Tenn. Crim. App. Apr. 17, 2001) (No Tenn. R. App. P. 11 application filed) ("Reckless endangerment requires a deadly weapon, while evading arrest requires a motor vehicle. Moreover, evading arrest requires flight or an attempt to elude a law enforcement officer upon a signal to stop. Thus, there is not an identity of elements, and the offenses pass *Blockburger* scrutiny."); *see also State v. Cross*, 2010 WL 2432022, at *7; *State v. Paulson*, No. E2007-02621-CCA-R3-CD, 2009 WL 3047004, at *8 (Tenn. Crim. App. Sept. 24, 2009) (No Tenn. R. App. P. 11 application filed); *State v. Menifee*, No. M2005-00708-CCA-R3-CD, 2006 WL 2206067, at * 7 (Tenn. Crim. App. July 31, 2006), *perm. app. denied* (Tenn. Dec. 27, 2006); *State v. Patrick*, No. E2003-02382-CCA-R3-CD, 2005 WL 544738, at *5 (Tenn. Crim. App. Mar. 8, 2005), *perm. app. denied* (Tenn. Sept. 12, 2005).

offense nor is one a lesser included offense of the other for the purpose of the *Blockburger* test which we have now adopted in *State v. Watkins*.

Mr. Cross has failed to articulate an argument that there is a clear legislative intent to preclude a defendant from being charged and convicted of Class D felony evading arrest and Class E felony reckless endangerment in a single proceeding. Nor do we discern, after reviewing the statutory elements of these two offenses, a clear indication that the Tennessee General Assembly considered Class D felony evading arrest and Class E felony reckless endangerment to constitute the same offense or that it intended to bar convictions for both offenses.[8] Because the offenses fail under the second prong of *State v. Watkins*, Mr. Cross is not entitled to relief on the basis of double jeopardy.

### III.

We directed the parties to address whether the trial court committed plain error by instructing the jury that felony reckless endangerment with a deadly weapon was a lesser-included offense of the offense charged in count one of the indictment – aggravated assault under Tenn. Code Ann. § 39-13-102(a)(1)(B). Both Mr. Cross and the State agree that reckless endangerment with a deadly weapon is not a lesser-included offense of aggravated assault committed by intentionally or knowingly causing another to reasonably fear imminent bodily injury by use or display of a deadly weapon and that the trial court committed plain error by giving this instruction.

Even though the State concedes that Mr. Cross's conviction under count one must be vacated, it argues that the case should be remanded to the trial court for a new trial on any applicable lesser-included offense of aggravated assault that has not already been rejected by the jury. Mr. Cross has not responded directly to the State's request for a remand. Reckless endangerment with a deadly weapon is not a lesser-included offense of aggravated assault committed by intentionally or knowingly causing another to reasonably fear imminent bodily injury by use or display of a deadly weapon. Accordingly, we find that the trial court

---

[8]We note, for example, that the General Assembly has classified Class D felony evading arrest as an offense against the administration of government, *see* Tenn. Code Ann. Title 39, Chapter 16, and specifically as an obstruction of justice offense, *see* Tenn. Code Ann. Title 39, Chapter 16, Part 6. Alternatively, Class E felony reckless endangerment has been categorized by the General Assembly as an offense against persons, *see* Tenn. Code Ann. Title 39, Chapter 13, and specifically as an assaultive offense, *see* Tenn. Code Ann. Title 39, Chapter 13, Part 1. While not determinative in and of itself, the fact that these two offenses were codified in separate chapters reinforces the presumption supplied by *Blockburger* that the General Assembly intended the two offenses to be punished separately. *See United States v. Boldin*, 772 F.2d 719, 729 (11th Cir. 1985); *United States v. Coachman*, 727 F.2d 1293, 1300 (D.C. Cir. 1984); *see generally State v. Watkins*, slip op. at 14.

committed plain error by charging reckless endangerment with a deadly weapon as a lesser-included offense of the charge in count one and, therefore, that Mr. Cross's conviction on count one should be vacated and that the case should be remanded for a new trial on any other lesser-included offense that has not already been rejected by the jury. We note that the State's request is consistent with the procedure adopted by this Court under similar circumstances in *State v. Rush*, 50 S.W.3d 424, 432 (Tenn. 2001).[9]

**IV.**

Mr. Cross insists that the evidence is insufficient to support two of his felony convictions. First, he argues that there is insufficient evidence to support his conviction for Class D felony evading arrest because the record does not show that his fleeing or attempting to flee from the law enforcement officers created a risk of death or injury to innocent bystanders or other third parties. Second, he argues that there is insufficient evidence to support his conviction for reckless endangerment committed with a deadly weapon (count three) because the record does not show that his conduct placed or may have placed any person, other than Deputy Smith, in imminent danger of death or serious bodily injury. We have another view of the record.

---

[9]We stated in *State v. Rush* that

[b]ecause the jury was not properly instructed regarding lesser-included offenses of attempted second degree murder, and because [the Defendant] was convicted of an offense which was neither included in the indictment nor a lesser-included offense of attempted second degree murder, [the Defendant] must have a new trial on Count I of the indictment, charging the attempted second degree murder of Tina Rush. On that Count, however, the jury at the first trial has rejected the charges of attempted second degree murder and attempted voluntary manslaughter by finding [the Defendant] guilty of a lesser offense, even though the offense on which it convicted [the Defendant] was not properly before it. To retry him, under these circumstances, for attempted second degree murder and attempted voluntary manslaughter would violate constitutional prohibitions against double jeopardy. *See State v. Maupin*, 859 S.W.2d 313 (Tenn. 1993) (allowing retrial on lesser-included offenses but prohibiting retrial on the greater offense). Thus, on remand, [the Defendant] should be tried for any offenses which qualify under the *Burns* analysis as lesser-included offenses of attempted second degree murder that (1) were not originally charged; or (2) were charged but which are lesser offenses than reckless aggravated assault.

*State v. Rush*, 50 S.W.3d at 432.

**A.**

When evaluating a challenge to a conviction based upon the sufficiency of the evidence, "we must determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also* Tenn. R. App. P. 13(e); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). A verdict of guilty removes the presumption of innocence to which a defendant had formerly been entitled replacing it with a presumption of guilt; accordingly, the defendant bears the burden of demonstrating the insufficiency of the evidence to sustain a guilty verdict. *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011); *State v. Banks*, 271 S.W.3d 90, 137-38 (Tenn. 2008). In conducting this analysis, "we must afford the State the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010); *see also State v. Casper*, 297 S.W.3d 676, 683 (Tenn. 2009).

**B.**

Mr. Cross concedes that he passed two other motorists in no passing zones on blind curves. However, he insists that the record lacks any evidence that these two motorists had any reaction when he passed them or that he was speeding when he passed them. He contends that the only threat he posed while trying to elude capture was to oncoming traffic and that the evidence is insufficient to prove that his actions in evading arrest created a risk of death or injury to innocent bystanders because the record contains no testimony of oncoming traffic on the roads where the chase occurred.

We reject Mr. Cross's overly narrow interpretation of Tenn. Code Ann. § 39-16-603. In *State v. Turner*, 193 S.W.3d 522 (Tenn. 2006), the defendant, while attempting to evade a pursuing police officer, passed a vehicle in a no-passing zone, ignored a four-way stop sign, and drove through two red lights before coming to a stop in his own driveway. *State v. Turner*, 193 S.W.3d at 524. In response to an argument similar to the one made by Mr. Cross in this case, we stated that "[b]y the plain language of the statute, proof of actual injury or death is not necessary for conviction. All that need be shown is that the defendant evaded arrest and that in so doing, he created the *risk* of death or injury." *State v. Turner*, 193 S.W.3d at 525. Based on this interpretation of Tenn. Code Ann. § 39-16-603, we held that "[c]learly, the defendant created a risk of death or injury to every driver . . . in his proximity as he operated his vehicle heedless of the traffic signals. We conclude . . . that a reasonable juror could have found that the defendant's conduct placed innocent bystanders or third parties at risk." *State v. Turner*, 193 S.W.3d at 525.

In his efforts to evade Deputy Smith on Keith Valley Road, Mr. Cross passed two other vehicles on blind curves. During the chase, Mr. Cross was driving at speeds of eighty to ninety miles per hour on stretches of road with a forty-five mile per hour speed limit. Taking the strongest legitimate view of the evidence in favor of the State and drawing all reasonable inferences in the State's favor, we cannot agree with Mr. Cross's suggestion that he was not speeding when he passed these two vehicles on Keith Valley Road. Mr. Cross was also being pursued by Deputy Smith with his emergency lights flashing and siren blaring. We have little difficulty in concluding that a rational jury could find that Mr. Cross's flight from the police created "a risk" of injury to the drivers of these other vehicles. *See* Tenn. Code Ann. § 39-16-603(b)(3). Accordingly, the evidence is sufficient to support his conviction under Tenn. Code Ann. § 39-16-603.

## C.

We likewise reject Mr. Cross's argument that the evidence was insufficient to demonstrate that his conduct placed or may have placed persons other than Deputy Smith in imminent danger of death or serious bodily injury. Tenn. Code Ann. § 39-13-103(a). We have previously held that "'[f]or the threat of death or serious bodily injury to be "imminent," [a] person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger.'" *State v. Goodwin*, 143 S.W.3d 771, 777-78 (Tenn. 2004) (quoting *State v. Payne*, 7 S.W.3d at 28). We have also held that the State may satisfy its burden by demonstrating that a "'person or class of persons'" other than the defendant was in the zone of danger. *State v. Goodwin*, 143 S.W.3d at 778 (quoting *State v. Payne*, 7 S.W.3d at 28). The zone of danger has been defined as "'that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area.'" *State v. Goodwin*, 143 S.W.3d at 778 (quoting *State v. Payne*, 7 S.W.3d at 28).

In this case, Mr. Cross sped past two vehicles in no passing zones on blind curves while being chased by a deputy sheriff in a marked cruiser with its flashing lights and siren engaged. He did so on a road with a forty-five mile per hour speed limit while accelerating to speeds of eight to ninety miles per hour. There were at least two other drivers other than Deputy Smith (to whom count one is addressed) that were placed in the zone of danger by Mr. Cross's conduct. Accordingly, the record contains sufficient evidence to support Mr. Cross's conviction for reckless endangerment committed with a deadly weapon in violation of Tenn. Code Ann. § 39-13-103 as to a person other than Deputy Smith.

## V.

As a final matter, Mr. Cross insists that the sentences imposed by the trial court are excessive. More particularly, he argues that two of the three enhancement factors relied upon by the trial court – those in Tenn. Code Ann. § 40-35-114(8), (10) – were inapplicable. The Court of Criminal Appeals agreed with Mr. Cross, at least in part, when it held that the trial court should not have considered the enhancement factor in Tenn. Code Ann. § 40-35-114(10). However, the Court of Criminal Appeals found that this error was harmless. The State takes issue with the holding of the Court of Criminal Appeals that the trial court should not have considered the enhancement factor in Tenn. Code Ann. § 40-35-114(10).[10]

### A.

Either the defendant or the State may appeal "the length, range or the manner of service of the sentence imposed by the sentencing court." *See* Tenn. Code Ann. §§ 40-35-401(a), -402(a) (2006). When a sentence is challenged, "the appellate court shall conduct a de novo review on the record of the issues . . . with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. §§ 40-35-401(d), -402(d). This "presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). However, if "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and the courts must review the sentence de novo. *State v. Carter*, 254 S.W.3d at 345.

### B.

Mr. Cross takes issue with the trial court's reliance on the enhancement factor in Tenn. Code Ann. § 40-35-114(8) – "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." He insists that his "January 14, 2007" conviction for driving under the influence did not arise from conduct that amounted to a violation of his probation resulting from his 1992 incest conviction because he had completed his probation for his 1992 offense by the time that the driving under the influence conviction occurred. This argument is based on, at best, a misunderstanding of the record.

---

[10]In the alternative, the State argues that if the trial court's consideration of the enhancement factor in Tenn. Code Ann. § 40-35-114(10) was error, the error was indeed harmless.

Mr. Cross's pre-sentence report reveals that he was convicted for incest on December 2, 1992. He was sentenced to four years in custody, followed by four years on probation. On November 30, 1996, while still on probation from his December 1992 incest conviction, Mr. Cross was arrested for driving under the influence. The Court of Criminal Appeals determined that he was convicted of this offense in 1997, and that this conviction was a violation of the conditions of Mr. Cross's probation. *State v. Cross*, 2010 WL 2432022, at * 11.

At the sentencing hearing conducted on August 22, 2008, the trial court, relying on the pre-sentence report, found "when [Mr. Cross] was previously convicted in 1992 by the Honorable Mayo Mashburn there was a violation that was ultimately filed because he got a new DUI arrest and ultimate conviction while he was on probation." In his briefs filed in both the Court of Criminal Appeals and this Court, Mr. Cross calls the trial court to task by arguing:

> The trial court's finding that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community was based on the court's erroneous factual belief that after defendant was placed on probation in 1992 he was convicted of another crime. In fact, as set forth in the pre-sentence report, defendant was sentenced to four (4) years probation in December 2, 1992 and was convicted on his driving under the influence charge on January 14, 2007. Defendant had completed his felony probation prior to a new conviction. (citations to the record omitted).

The record does not support the assertion in Mr. Cross's briefs that he was convicted of the charge of driving under the influence on January 14, 2007. The very page in the record that Mr. Cross cites for this statement lists offenses occurring between January 2, 1988 and February 13, 2000. It lists no offenses or convictions occurring in 2007. In fact, the record contains no evidence that Mr. Cross was convicted of driving under the influence or any other offense on January 14, 2007. Contrary to Mr. Cross's assertion, the pre-sentence report shows that he was arrested on November 30, 1996, while still on probation, for driving under the influence of an intoxicant and that he was convicted of this offense on January 14, 1997.

Without citation to authority, Mr. Cross argues (1) that the Court of Criminal Appeals erred by using the pre-sentence report to determine the date of the offense that violated the terms of his probation; (2) that reliance on the enhancement factor in Tenn. Code Ann. § 40-35-114(8) must be predicated on a formal judgment of probation violation; and (3) that the

-16-

enhancement factor in Tenn. Code Ann. § 40-35-114(8) is inapplicable when the judgment of conviction for the offense that violated the conditions of probation was not entered until after the expiration of the probationary period.

The Tennessee Rules of Appellate Procedure require more than bare assertions without citations to authority. Tenn. R. App. P. 27(a)(7) requires that briefs contain arguments with regard to each issue presented that include "citations to the authorities . . . relied on." As we have previously noted, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Board of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010).

However, in an abundance of caution, we note first that Tenn. Code Ann. § 40-35-210(b)(2), (f) (2010) requires the courts to consider the pre-sentence report when making sentencing decisions. Second, we also note that, in addition to Mr. Cross's pre-sentence report, the State introduced (1) a probation violation report stemming from an October 30, 1996 driving under the influence offense, (2) an affidavit of violation of the 1992 probation for driving under the influence, as well as a signed probation violation warrant for the same offense, and (3) a judgment of conviction for three driving under the influence offenses committed in 1996 prior to the expiration of Mr. Cross's probation for his 1992 incest conviction. These materials provide sufficient evidence to trigger consideration of the enhancement factor in Tenn. Code Ann. § 40-35-115(8).

Even if we were to assume that Mr. Cross's arguments have merit – which we do not – we also note that the State presented evidence at the sentencing hearing regarding a July 21, 2008 court order finding that Mr. Cross had violated the terms of his probation on his sentence for violating the requirements of the sex offender registry. This latter violation meets the defendant's litany of requirements and is, in and of itself, sufficient to support the trial court's decision to apply the enhancement factor in Tenn. Code Ann. § 40-35-114(8). We find no error in the trial court finding this enhancement factor to be applicable.

## C.

Mr. Cross next insists that the trial court erred by considering the enhancement factor in Tenn. Code Ann. § 40-35-114(10) – "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." He argues (1) that considering this enhancement factor violated his constitutional right to a trial by jury in violation of *Blakely v. Washington*, 542 U.S. 296 (2004); (2) that this enhancement factor improperly replicated

one of the elements of his evading arrest and reckless endangerment conviction under count three; and (3) that the record does not show that he acted with "no hesitation."[11]

Mr. Cross advanced the same arguments before the Court of Criminal Appeals. That court found one of Mr. Cross's arguments, his contention regarding the duplication of an element of the offense, to be persuasive. The Court of Criminal Appeals concluded that

> Tennessee Code Annotated section 40-35-114(10) allows a trial court to enhance a sentence if "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." "The determinative language of this factor is 'the risk to human life was high.'" *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994). The appellant is correct that the same proof used to convict the appellant of evading arrest with risk of death and reckless endangerment with a deadly weapon cannot be used to support the enhancement. The trial court therefore erred in relying on this enhancement.

*State v. Cross*, 2010 WL 2432022, at *11. However, the Court of Criminal Appeals upheld the trial court's sentencing decision. In doing so, the court noted the broad discretion enjoyed by trial courts under the 2005 amended sentencing provisions. The intermediate appellate court also concluded that the trial court's considerations were otherwise appropriate, that the trial court would have sentenced Mr. Cross to the maximum sentence even in the absence of this enhancement factor, and that the other enhancement factors adequately justified the sentence. For these reasons, the Court of Criminal Appeals affirmed the sentence imposed by the trial court. *State v. Cross*, 2010 WL 2432022, at *11.

The State, disagreeing with Mr. Cross and the Court of Criminal Appeals, insists that the trial court properly considered the enhancement factor in Tenn. Code Ann. § 40-35-114(10). The State advances two arguments to support its position. Its first argument is predicated on the high risk to Deputy Smith's life caused by Mr. Cross's conduct. The State reasons that Mr. Cross's convictions for felony evading arrest (count two) and felony

---

[11]We note that fundamental tension exists between Mr. Cross's arguments regarding Tenn. Code Ann. § 40-35-114(10). If the premise of his second argument is correct, the enhancement factor must have been a fact that was submitted to the jury. To the contrary, if the premise of his second argument is correct, the jury has already found this enhancement factor by finding Mr. Cross guilty of these offenses. Similarly, if Mr. Cross's third argument is correct, then his second argument fails. Mr. Cross's felony convictions for evading arrest and reckless endangerment do not require that the acts have been committed with "no hesitation." Thus, application of this factor would not merely replicate an element of Mr. Cross's evading arrest and reckless endangerment conviction.

reckless endangerment (count three) involved the risk of harm to persons other than Deputy Smith and, therefore, that the trial court could appropriately consider the risk of harm to Deputy Smith in arriving at the appropriate sentences for these two convictions. The State's second argument is that even if the trial court should not have relied on the enhancement factor in Tenn. Code Ann. § 40-35-114(10), its sentencing decisions should be upheld (1) because they are consistent with the statutorily defined principles and purposes of sentencing in Tennessee and (2) that other applicable enhancement factors adequately support the sentences that Mr. Cross received.

We first turn to Mr. Cross's argument that consideration of the enhancement factor in Tenn. Code Ann. § 40-35-114(10) violated his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296 (2004). Mr. Cross fails to acknowledge or address the various decisions in which this Court has addressed the 2005 amendments to Tennessee's sentencing provisions. This Court has held repeatedly that the 2005 amendments resolved the Sixth Amendment constitutional concerns addressed in *Blakely v. Washington* that arise when trial courts rely on enhancement factors that have not been found by a jury. *See, e.g.*, *State v. Hester*, 324 S.W.3d 1, 69 (Tenn. 2010); *State v. Banks*, 271 S.W.3d at 144-45; *State v. Carter*, 254 S.W.3d at 342-44.

Prior to being amended in 2005, Tennessee's sentencing laws set presumptive sentences in non-capital cases. *State v. Carter*, 254 S.W.3d at 342. The midpoint of the sentencing range was the presumptive sentence for all Class A felonies and the statutory minimum sentence was the presumptive sentence for all other felonies. *State v. Carter*, 254 S.W.3d at 342. Under the prior sentencing scheme, a trial court could not increase a defendant's sentence beyond the presumptive sentence in the absence of an enhancement factor. However, a trial court could increase the sentence to the maximum within the range if it found even a single enhancement factor. *See State v. Banks*, 271 S.W.3d at 144.

In response to constitutional concerns arising from the United States Supreme Court's *Blakely v. Washington* decision, the General Assembly amended Tennessee's sentencing statutes to remove presumptive sentences. *State v. Carter*, 254 S.W.3d at 343. These changes to the sentencing structure "enabled Tennessee's trial courts to sentence a defendant to any sentence within the applicable range as long as the length of the sentence is 'consistent with the purposes and principles' of the sentencing statutes." *State v. Hester*, 324 S.W.3d at 69 (quoting *State v. Banks*, 271 S.W.3d at 145). The 2005 amendments to Tennessee's sentencing laws have plainly "increase[d] the amount of discretion a trial court exercises when imposing a sentencing term." *State v. Carter,* 254 S.W.3d at 344. These changes also eliminated the *Blakely* constitutional concern with Tennessee trial courts finding the facts necessary to apply enhancement factors. *See, e.g.*, *State v. Hester*, 324 S.W.3d at 69; *State v. Franklin*, 308 S.W.3d at 826; *State v. Banks*, 271 S.W.3d at 144-45; *State v. Carter*, 254

S.W.3d at 342-44.  Thus, we find Mr. Cross's argument based on *Blakely v. Washington* to be unavailing.

We need not decide definitively whether the trial court could have relied on the enhancement factor in Tenn. Code Ann. § 40-35-114(10) in order to determine whether the sentences Mr. Cross received were excessive.  Even if this enhancement factor should not have been considered, the sentences imposed by the trial court were not excessive.

While the precise metes and bounds of appellate review under the current increased trial court discretion structure have not yet been fully defined, some markers are fairly clear.  An improper consideration of an enhancement factor or factors will not necessarily invalidate the sentence when a trial court imposes a sentence after considering and weighing the principles and purposes of sentencing set forth in Tenn. Code Ann. § 40-35-210.  To the contrary, when a trial court has sentenced in accordance with these principles and another enhancement factor or factors adequately support the trial court's decision, the reviewing court will leave the decision entrusted to the discretion of the trial court undisturbed.  *See*, *e.g.*, *State v. Banks*, 271 S.W.3d at 147; *see also State v. Letson*, No. E2010-00055-CCA-R3-CD, 2011 WL 3862573, at *7 (Tenn. Crim. App. Aug. 26, 2011) (No Tenn. R. App. P. 11 application filed); *State v. Ireson*, No. E2010-01648-CCA-R3-CD, 2011 WL 2410322, at *13 (Tenn. Crim. App. June 10, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011); *State v. Merritt*, No. M2010-00181-CCA-R3-CD, 2010 WL 4318866, at *4 (Tenn. Crim. App. Oct. 29, 2010), *perm. app. denied* (Tenn. Feb. 16, 2011); *State v. Palacio*, No. M2009-02445-CCA-R3-CD, 2010 WL 3719179, at *4 (Tenn. Crim. App. Sept. 23, 2010), *perm. app. denied* (Tenn. Jan. 18, 2011).

With regard to Mr. Cross's sentences, the trial court emphasized a variety of considerations beyond the enhancement factors which are consistent with the principles and policies of sentencing in the State of Tennessee.  Consistent with Tenn. Code Ann. § 40-35-102(3)(A) (2010), the trial court considered general deterrence with regard to concerns about an on-going problem of drivers attempting to evade arrest which is something the trial court indicated that "we see . . . in our community a lot."  Reflecting Tenn. Code Ann. §§ 40-35-103(1)(B), -210(b)(3) (2006), the trial court expressed a desire to avoid depreciating the seriousness of Mr. Cross's offenses.  Consistent with Tenn. Code Ann. § 40-35-210(b)(4), the trial court observed that Mr. Cross's offenses endangered himself, the law enforcement officers, and the general public solely to avoid being arrested for driving with a revoked license.  The trial court also placed appropriately significant weight on two other enhancement factors – Tenn. Code Ann. § 40-35-114(1), (8) – by pointing out that Mr. Cross had previously violated the conditions of his "release into the community" and that he manifested an inability or unwillingness to comply with probationary conditions.  These

considerations more than adequately justify the trial court's sentencing decision. Accordingly, we reject Mr. Cross's contention that the sentences imposed were excessive.

**VI.**

In summary, we hold (1) that Mr. Cross's convictions for Class D felony evading arrest and Class E felony reckless endangerment do not violate the double jeopardy protections in the federal or state constitutions; (2) that Mr. Cross's conviction for reckless endangerment under count one must be reversed because of the trial court's erroneous lesser-included offense charge; (3) that the evidence supports the remaining convictions; and (4) that the sentences Mr. Cross received for the remaining convictions are not excessive. Accordingly, we remand this case to the trial court for a new trial on any applicable lesser-included offense of aggravated assault in violation of Tenn. Code Ann. § 39-13-102 that has not previously been rejected by the jury. For the purposes of this remand, we also call the trial court's attention to Tenn. Code Ann. § 39-16-603(4) which provides specific direction with regard to a defendant's license, including in circumstances where a defendant's license has already been suspended. Costs are taxed to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., JUSTICE

-21-