# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville January 29, 2013

## STATE OF TENNESSEE v. HOWARD B. LEWIS, III

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2011-CR-264    Robert E. Burch, Judge**

---

**No. M2012-02040-CCA-R3-CD - Filed February 27, 2013**

---

A Dickson County grand jury indicted appellant, Howard B. Lewis, III, for especially aggravated burglary, aggravated assault, and domestic assault. He entered a guilty plea to aggravated assault, and the State dismissed the remaining charges. The parties agreed to submit the length of the sentence and any alternative sentencing decision to the trial court. Following a sentencing hearing, the trial court sentenced appellant to six years in the Tennessee Department of Correction. Appellant now challenges the trial court's findings, alleging that the trial court impermissibly enhanced his sentence. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Peggy R. Smith, White Bluff, Tennessee, for the appellant, Howard B. Lewis, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; and Timothy J. Peters, Assistant District Attorney General Pro Tem, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

The offenses in this case stemmed from appellant's entry into the home of his now ex-girlfriend, striking her, and stabbing her friend.[1] The presence report indicated that appellant was released on probation at the time of the offenses. We glean from the record that the trial court had previously held a probation revocation hearing and had revoked appellant's probation.

At the sentencing hearing, the defense presented Wendy James, appellant's probation officer, as a witness, who testified that she had supervised appellant's probation and had prepared appellant's presentence report. Ms. James testified that appellant was enrolled in a thirteen-week self-help class through the probation office. She acknowledged that she testified at appellant's probation revocation hearing and that she would be "fine" with the trial court's returning him to probation.

On cross-examination, the State reviewed appellant's criminal history with Ms. James, and she acknowledged that he had previously violated the terms of probation on two occasions. Ms. James stated that when she confronted appellant with his actions underlying this case, he told her that he went into his girlfriend's house, found her in bed with another man, and stabbed the man.

Rick Gordon, a production supervisor for Trinity Marine in Ashland City, testified that he had employed appellant for approximately one and a half years at the time of the hearing. Appellant was punctual and had a perfect attendance record, having only missed work because of a required surgery. Mr. Gordon had not received any complaints about appellant and had not issued any "write-ups" to him. Mr. Gordon stated that if the trial court gave appellant probation, he could return to work.

Melva Lewis, appellant's mother, testified that appellant had lived with her for approximately two years at the time of the hearing. He helped pay the bills and did not stay out late. She stated that they had no problems in their relationship. She told the court that she believed appellant received a "raw deal" because he was just defending himself, and she did not think it was fair. Ms. Lewis explained that she needed appellant at home because her husband, appellant's father, was just diagnosed with cancer. If appellant received probation, she would allow him to continue to live with her.

---

[1] The record does not contain a copy of the plea submission hearing. However, a recitation of the facts is included in the presentence report. The presentence report, the transcript of the sentencing hearing, and the remaining record are adequate for meaningful appellate review. *See State v. Caudle*, — S.W.3d —, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *6 (Tenn. Nov. 27, 2012).

Appellant testified on his own behalf. He stated that on the day in question, he went to the house of his girlfriend,[2] where he often stayed, to locate a jacket for work. When he went inside, he found her in bed with another man, Jeffrey Davidson. He had spoken with his girlfriend about Mr. Davidson because she sent frequent text messages to Mr. Davidson and saw him when she went out. Appellant's girlfriend denied any wrongdoing when he confronted her.

On cross-examination, appellant clarified that when he walked into his girlfriend's home, appellant was in the living room, and he saw her walk out of her bedroom. He did not actually see her in bed with Mr. Davidson. Appellant stated that although he still lived there, he did not spend the night there the previous night because he and his girlfriend were arguing. However, he believed that they were still "together." Appellant stated that he felt bad that Mr. Davidson was injured but that he did not remember stabbing him. He recalled seeing Mr. Davidson on his girlfriend's bed and his "com[ing] at [appellant]." They began fighting. Appellant did not know where the knife came from, but he did not have one in his possession when he arrived. He admitted that he told the police where to find the knife he used to stab Mr. Davidson. Appellant also admitted that if he had just left his girlfriend's house immediately, no one would have gotten hurt. At the close of the evidence, the State asked the trial court to order that the sentence in this case be served consecutively to the sentence for the probation violation.

In considering the appropriate sentence, the trial court considered the requisite factors on the record. The trial court found three enhancement factors: (1) appellant had a criminal history above that necessary to establish the appropriate range of punishment; (2) appellant had previously failed to comply with the conditions of release in the community; and (3) appellant was on probation when he committed the offense. *See* Tenn. Code Ann. § 40-35-114(1), (8), (13)(C) (2010). The court considered then rejected two of the three mitigating factors submitted by appellant, that appellant acted under strong provocation and that substantial grounds existed to justify or excuse appellant's conduct, and gave "slight weight" to the third factor, that it was unlikely appellant had a sustained intent to violate the law. *See id.* § 40-35-113(2), (3), (11). Based upon these factors, the trial court sentenced appellant to the maximum sentence of six years. The trial court reviewed appellant's request for a suspended sentence and determined that based on his long history of violent criminal conduct, confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrent to people likely to commit similar offenses. *See id.* § 40-35-103(1)(B). The court also noted that less restrictive measures had been frequently or recently applied to appellant unsuccessfully and that based on appellant's previous history, his

---

[2] We refer to the victim of the dismissed domestic assault charge as appellant's "girlfriend," even though it was disputed as to whether they were still in a relationship at the time of the offense.

potential for rehabilitation was not good.  *See id.* § 40-35-103(1)(C).  The trial court ordered the six-year sentence to be served concurrently with the sentence for the probation violation.

## II.  Analysis

Appellant's sole contention with regard to the sentence imposed by the trial court was that "the trial court erred in enhancing his sentence beyond the relevant statutory maximum in light of *Blakely*,[3] which is three years."

In *State v. Cross*, 362 S.W.3d 512, 528 (Tenn. 2012), our supreme court aptly stated, "[Appellant] fails to acknowledge or address the various decisions in which this Court has addressed the 2005 amendments to Tennessee's sentencing provisions. This Court has held repeatedly that the 2005 amendments resolved the Sixth Amendment constitutional concerns addressed in *Blakely v. Washington* that arise when trial courts rely on enhancement factors that have not been found by a jury."  The court continued:

> Prior to being amended in 2005, Tennessee's sentencing laws set presumptive sentences in non-capital cases.  The midpoint of the sentencing range was the presumptive sentence for all Class A felonies and the statutory minimum sentence was the presumptive sentence for all other felonies.  Under the prior sentencing scheme, a trial court could not increase a defendant's sentence beyond the presumptive sentence in the absence of an enhancement factor.  However, a trial court could increase the sentence to the maximum within the range if it found even a single enhancement factor.

> In response to constitutional concerns arising from the United States Supreme Court's *Blakely v. Washington* decision, the General Assembly amended Tennessee's sentencing statutes to remove presumptive sentences. These changes to the sentencing structure "enabled Tennessee's trial courts to sentence a defendant to any sentence within the applicable range as long as the length of the sentence is 'consistent with the purposes and principles' of the sentencing statutes."  The 2005 amendments to Tennessee's sentencing laws have plainly "increase[d] the amount of discretion a trial court exercises when imposing a sentencing term."  These changes also eliminated the *Blakely* constitutional concern with Tennessee trial courts finding the facts necessary to apply enhancement factors.  Thus, we find [appellant's] argument based on *Blakely v. Washington* to be unavailing.

---

[3]  *Blakely v. Washington*, 542 U.S. 296 (2004).

*Id.* at 528-29 (internal citations omitted).

Likewise, appellant in the instant case fails to recognize that the sentencing arguments previously cognizable under *Blakely v. Washington* were rendered moot by the 2005 Amendments to the Sentencing Reform Act of 1989. The trial court did not err in enhancing appellant's sentence to six years based on the existence of three enhancement factors not found by a jury.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE