IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

**STATE OF TENNESSEE v. RANDALL BOAZ**

**Appeal from the Circuit Court for Giles County**
**No. 11812     Russell Parkes, Judge**

_____

**No. M2015-01532-CCA-R3-CD – Filed August 9, 2016**

_____


Defendant, Randall Boaz, appeals his Giles County conviction for reckless endangerment with a deadly weapon. His single issue on appeal is a claim of insufficient evidence that he used his vehicle as a deadly weapon. Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Claudia Jack, District Public Defender; Hershell Koger (on appeal and at trial), Assistant Public Defender; and Brandon E. White (on appeal), Columbia, Tennessee, for the appellant, Randall Boaz.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General, Senior Counsel; Brent A. Cooper, District Attorney General; and Jonathan Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural History and Factual Summary*

On August 14, 2013, the Giles County Grand Jury indicted Defendant on one count of aggravated assault. The following evidence was presented at trial.

On December 18, 2013, Tamara Ingram, Defendant's wife, filed a divorce complaint and a petition for an ex parte order of protection against Defendant. In the petition, Ms. Ingram alleged an altercation in which Defendant "pushed [her] to the

floor" and described Defendant as having recurring "rages" and mood swings. At trial, Ms. Ingram further explained that she sought an order of protection because Defendant often threatened her with "physical actions" over the course of their two-year marriage.

The Chancery Court granted the order of protection shortly after Ms. Ingram filed the petition. The order mandated that Defendant could not: (1) "abuse, threaten to abuse, hurt or try to hurt, or frighten [Ms. Ingram]"; (2) "put [Ms. Ingram] . . . in fear of being hurt or in fear of not being able to leave or get away"; (3) "stalk or threaten to stalk [Ms. Ingram]"; (4) "come about [Ms. Ingram] . . . (including coming by or to a shared residence) for any purpose"; or (5) "contact [Ms. Ingram] . . . either directly or indirectly by phone, email, messages, mail or any other type of communication or contact." Although Defendant never communicated with Ms. Ingram, Ms. Ingram testified that she often saw Defendant driving by her Pulaski residence located on Beech Hill Road over the weeks leading to the offense. Defendant did not live at the residence following their separation in December, and Ms. Ingram testified that she knew of no reason for Defendant to be near her home.

On February 25, 2014, Ms. Ingram went to the Giles County Sheriff's Department to obtain an incident report for her insurance company.[1] The receptionist called Ms. Ingram from the waiting area to inform her that Defendant had also entered the building. To avoid a violation of the protective order, personnel placed Ms. Ingram in a separate room. After obtaining the incident report, Ms. Ingram drove back to her workplace. There, Ms. Ingram received a phone call from the Sheriff's Department requesting for her to return. Ms. Ingram complied, and upon her arrival, she gave permission for Investigator Timothy Scott to drive her vehicle. Investigator Scott planned to drive Ms. Ingram's truck to Beech Hill Road near her residence to discover any possible violations of the protective order by Defendant. Investigator Scott testified that the Sheriff's Department sought to be proactive and to prevent any potential harm to Ms. Ingram.

Wearing a blonde wig and sunglasses to resemble Ms. Ingram, Investigator Scott drove Ms. Ingram's vehicle eastbound towards her residence. Once on Beech Hill Road, a two-lane road, Investigator Scott spotted Defendant's vehicle travelling towards him in the opposite lane. Investigator Scott identified Defendant's vehicle by the chipped paint above the windshield. Investigator Scott estimated that both he and Defendant were travelling around forty miles per hour at the time. As the two vehicles approached each other, Defendant's vehicle rapidly crossed the double yellow line into Investigator Scott's lane. Investigator Scott took evasive action and diverted to the side of the roadway to avoid a head-on collision. Investigator Scott testified that Defendant "intentionally cross[ed] the double-yellow line," noting that both of Defendant's driver's side tires had

---

[1] Ms. Ingram's truck had previously been "scraped down the side," and she was seeking an estimate to have the truck repaired.

entered into his lane. Investigator Scott further testified that Defendant "was looking directly ahead through the windshield" and that Defendant's incursion into his lane was abrupt, not gradual. After looking into his side mirror, Investigator Scott saw that Defendant had reentered his lane and continued driving westbound. Investigator Scott claimed that without his taking evasive action, Defendant's vehicle would have struck Ms. Ingram's vehicle. Defendant did not testify at trial.

On March 10, 2015, the jury found Defendant guilty of one count of reckless endangerment with a deadly weapon,[2] a Class E felony. The trial court sentenced Defendant to three years in incarceration as a Range II, multiple offender but suspended the balance of the sentence upon Defendant's serving ninety days in confinement. The trial court placed Defendant on four years of supervised probation. Defendant filed a motion for new trial on May 20, 2015, and the trial court subsequently denied his motion. On August 4, 2015, Defendant filed a timely notice of appeal.

*Analysis*

Defendant argues that the State presented insufficient evidence at trial to support a conviction of reckless endangerment with a deadly weapon.[3] Specifically, Defendant raises the issue that the State failed to prove beyond a reasonable doubt that Defendant used his vehicle as a "deadly weapon." The State disagrees, asserting that the evidence presented at trial supports that Defendant used his vehicle in a manner consistent with the definition of "deadly weapon" pursuant to Tennessee Code Annotated section 39-11-106(a)(5). We agree with the State.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of

---

[2] Reckless endangerment with a deadly weapon is not a lesser-included offense of aggravated assault. *State v. Cross*, 362 S.W.3d 512, 522 (Tenn. 2012). According to his appellate brief, Defendant specifically agreed to the jury charge including reckless endangerment, thereby waiving any issue with regard to an amendment of the indictment. *See State v. John J. Ortega, Jr.*, No. M2014-010420-CCA-R3-CD, 2015 WL 1870095, at *6 (Tenn. Crim. App. Apr. 23, 2015) (citing *Demonbreun v. Bell*, 226 S.W.3d 321, 326 (Tenn. 2007)), *no perm. app. filed*.

[3] Defendant initially raised an issue asserting that the trial court committed plain error in admitting the protective order as evidence. He withdrew this issue on appeal.

the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

"A person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). "[R]eckless endangerment will occur even if the victim does not suffer the threatened harm." *State v. Baggett*, 836 S.W.2d 593, 595 (Tenn. Crim. App. 1992). If committed with a deadly weapon, reckless endangerment is a Class E felony. T.C.A. § 39-13-103(b)(2). A "deadly weapon" is defined by one of two classifications. The first is "a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(A). Second, if an object is not deadly per se, it may be considered a deadly weapon if "the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(B). If evidence exists in the record indicating that the defendant used or intended to use an object in a manner capable of causing death or serious bodily injury, the evidence is sufficient to classify the object as a "deadly weapon." *See State v. McGouey*, 229 S.W.3d 668, 669-70 (Tenn. 2007).

Here, we must determine if a rational trier of fact could have found Defendant guilty beyond a reasonable doubt of using his vehicle as a "deadly weapon." This Court has held that vehicles can be considered deadly weapons under the meaning of Tennessee Code Annotated section 39-11-106(a)(5)(B). *See State v. Daetrus Pilate*, No. W2014-01593-CCA-R3-CD, 2015 WL 5173096, at *10 (Tenn. Crim. App. Aug. 31, 2015), *no perm. app. filed*; *State v. Tate*, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995). Likewise, vehicles have been considered deadly weapons for the purposes of reckless endangerment convictions. *See State v. Timothy Howard Cunningham*, No. M2013-02844-CCA-R3-CD, 2014 WL 3729904, at *6 (Tenn. Crim. App. July 25, 2014) (affirming conviction for reckless endangerment with a deadly weapon when defendant forced victim to drive vehicle into oncoming traffic), *no perm. app. filed*; *State v. Johnny C. Menifee*, No. M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *5 (Tenn. Crim.

App. July 31, 2006) (affirming conviction for reckless endangerment with a deadly weapon when defendant used vehicle to pressure victim to move a parked vehicle out of the way but ultimately swerved to avoid a collision), *perm. app. denied* (Tenn. Dec. 27, 2006). While vehicles are not always considered deadly weapons, "the method of [the vehicle's] use is the controlling factor" in making this case-by-case determination. *State v. Scott W. Long*, 1993 WL 328055, at \*3 (Tenn. Crim. App. Aug. 19, 1993), *perm. app. denied* (Tenn. Nov. 8, 1993).

Defendant contends that because both drivers evaded a collision, the evidence is insufficient to prove beyond a reasonable doubt that Defendant "actually intended to use" the vehicle to cause serious bodily injury or death to Investigator Scott, and therefore, the vehicle cannot be considered a deadly weapon for the purposes of reckless endangerment. However, in considering Tennessee Code Annotated section 39-11-106(a)(5)(B), the correct standard is not determining the actual intent to cause death or serious bodily injury with the vehicle, but rather if the defendant used or intended to use the vehicle *in a manner capable of* causing death or serious bodily injury. *See State v. Leslie A. Pryor*, No. M2005-01429-CCA-R3-CD, 2006 WL 2563438, at \*6 (Tenn. Crim. App. Aug. 31, 2006) ("The defendant misapprehends the law when he argues that if he did not intentionally use the truck to harm anyone, it cannot be considered a deadly weapon."). Furthermore, "the crime of reckless endangerment does not require any intentional mental state, only evidence that the defendant acted recklessly." *Scott W. Long*, 1993 WL 328055, at \*3. Thus, whether Defendant intended to harm Investigator Scott is immaterial.

The evidence presented at trial, when viewed in a light most favorable to the State, is sufficient to prove that Defendant used his vehicle in a manner capable of inflicting serious bodily injury to Investigator Scott. Defendant swerved into Investigator Scott's lane at the moment of their passing. Investigator Scott's testimony evinces that Defendant looked directly ahead as he shifted half of his vehicle into Investigator Scott's lane. Had it not been for Investigator Scott's evasive action, it can be reasonably concluded that the vehicles would have collided head-on. Defendant's act undoubtedly placed Investigator Scott in imminent danger of serious bodily injury. Because a rational trier of fact could conclude from the evidence presented at trial that Defendant used his vehicle as a deadly weapon, Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE