# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2018

## STATE OF TENNESSEE v. MAURICE GRAY

### Appeal from the Criminal Court for Shelby County
No. 15-00752     Chris Craft, Judge

_____

### No. W2017-01897-CCA-R3-CD

_____

A Shelby County jury convicted Defendant, Maurice Gray, of aggravated robbery, aggravated burglary, employing a firearm during the commission of a dangerous felony, convicted felon in possession of a firearm, convicted felon in possession of a handgun, and evading arrest. Defendant received a total effective sentence of twenty-nine years. On appeal, Defendant argues the following: (1) the evidence was insufficient for a rational juror to have found Defendant guilty on all charges beyond a reasonable doubt; (2) the trial court erred in ordering partially consecutive sentence alignment; and (3) the trial court erred in failing to merge counts three, four, and five. After a thorough review of the facts and applicable case law, we affirm Defendant's judgments of conviction but remand for merger of counts four and five.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Stephen Bush, District Public Defender; Barry W. Kuhn (on appeal) and William Johnson (at trial), Assistant District Public Defenders, for the appellant, Maurice Gray.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

On February 12, 2015, the Shelby County Grand Jury indicted Defendant on charges of aggravated robbery, aggravated burglary, employing a firearm during the commission of a dangerous felony, convicted felon in possession of a firearm, convicted felon in possession of a handgun, and evading arrest.

### *Jury trial*

Marcus Merriweather, the victim, testified that he had been previously convicted of possession of marijuana with intent to sell in 2011 and was currently on federal probation for possession of a handgun. On August 18, 2014, Mr. Merriweather was staying at a residence on Lowell Avenue. After a job interview that morning, he picked up food from Waffle House and returned home. Mr. Merriweather testified that the first assailant, Defendant, "came from the side of the house when [he] opened the door and forced [him] in the house." Defendant pointed a black gun with a long clip at Mr. Merriweather and asked where the marijuana was located. When Mr. Merriweather explained that he did not have any marijuana, Defendant hit Mr. Merriweather in the head with the gun. Mr. Merriweather lay on the ground, and Defendant called someone on the phone. A second armed assailant, co-defendant Ricky Faulkner, then entered the house, and Defendant took money out of Mr. Merriweather's pocket. Defendant then searched Mr. Merriweather's house while Mr. Faulkner guarded Mr. Merriweather. Defendant and Mr. Faulkner then ran out of the house and left in a burgundy Toyota Corolla. Mr. Merriweather stated that another individual was driving the vehicle.

When police arrived at Mr. Merriweather's residence, he informed the police that he had been robbed at gunpoint of $300 from his pocket, his phone, and his earrings. Later, Mr. Merriweather realized that Defendant and Mr. Faulkner had also stolen a Michael Kors watch and $900 from a drawer in the bedroom. Mr. Merriweather stated that he originally paid $300 for the earrings, $285 for the watch, and $600 for the phone. Mr. Merriweather later identified Defendant in a photographic lineup. Mr. Merriweather explained that, during the offense, he was "terrified[,]" "scared[,]" and believed that Defendant was going to kill him.

On cross-examination, Mr. Merriweather explained that the offenses occurred between 11:00 and 11:30 a.m. Mr. Merriweather stated that his encounter with Defendant lasted between ten and fifteen minutes. He agreed that he wrote on the photographic lineup that Defendant stole between $400 and $450 from his pocket. Mr.

Merriweather stated that he did not receive medical treatment for the injuries he received during the offenses.

Officer Dedrick Jones testified that he had worked as a uniform patrol for the Memphis Police Department ("MPD") since 2009. On August 18, 2014, Officer Jones received a "be on the lookout" ("BOLO") alert for a vehicle and individuals involved in a home invasion robbery on Lowell Avenue. The BOLO described a red Toyota Corolla and one suspect wearing a red t-shirt and leather pants. He located the vehicle in the "general area" of Mr. Merriweather's residence and initiated a traffic stop. When the vehicle came to a stop in a driveway, Officer Jones observed three individuals in the vehicle. Officer Jones approached Defendant, who was driving the vehicle, and asked for identification. Defendant gave Officer Jones another individual's identification. As Officer Jones turned and checked the identification of the rear passenger, Defendant "exited the driver front door and proceeded to run towards the back of the house." Officer Jones pursued Defendant into the backyard, and Defendant reached into his "waistband" and threw an automatic handgun with an extended clip over the fence in the backyard. Officer Jones then took Defendant into custody. Officer Jones patted Defendant down to ensure that Defendant did not have any other weapons and discovered "a watch in his possession, a large amount of cash, and some earrings." Officer Jones stated that the money that he obtained from the search of Defendant's person "appeared to be well over $1,000." After Defendant was transported to an MPD precinct, Officer Jones had "a general conversation" with Defendant in the kitchen area. Defendant informed Officer Jones that his job was to "rob people."

On cross-examination, Officer Jones explained that, when he initiated a stop on the Toyota Corolla, he "turned on [his] lights and sirens and let that individual know who was driving that vehicle that [he] was trying to stop them." Officer Jones asserted that Defendant stayed in his sight throughout the chase to the backyard fence.

Officer Charles Wren testified that he worked for the MPD. On August 18, 2014, Officer Wren was a member of the Airways Station Task Force and was alerted about "a home invasion in which a victim was robbed by two male blacks driving a Toyota [Corolla]." By the time Officer Wren arrived at the scene, Officer Jones had already located the vehicle. He saw Officer Jones running after a suspect and followed to assist in the foot chase. As the two officers were placing Defendant in custody, Officer Wren observed Mr. Faulkner "come out the rear window" of a house. As Officer Wren approached the house, Mr. Faulkner went back inside the house. Officers Wren and Jones arrested Defendant and Mr. Faulkner. On cross-examination, Officer Wren explained that, as he approached the residence with the Toyota Corolla in the driveway, he did not see any individuals in the vehicle.

- 3 -

Defendant testified that he had been previously convicted of facilitation of aggravated robbery in April 2010. Defendant stated that he met Mr. Merriweather at a dice game two weeks before the offenses. Defendant agreed that he went to Mr. Merriweather's house on August 18, 2014, to purchase some marijuana. Defendant entered Mr. Merriweather's house through the front door. Defendant and Mr. Merriweather discussed marijuana and the money that Defendant won two days before from gambling. Defendant gave Mr. Merriweather $100 for some marijuana. Mr. Merriweather had two pounds of marijuana in a bag, and he wanted $900 for one pound and $800 for the other. Mr. Merriweather gave one pound to Defendant to examine and measured out seven grams of the marijuana, which Defendant gave to Mr. Faulkner. Defendant gave the pound of marijuana back to Mr. Merriweather because it was poor quality. Defendant and Mr. Merriweather began arguing about the marijuana, and eventually Defendant agreed to purchase both pounds of marijuana. However, Defendant took the two pounds of marijuana without paying and left Mr. Merriweather's residence instead. Defendant also took a watch on Mr. Merriweather's table and a scale.

Approximately forty minutes later, Defendant was stopped by law enforcement. Defendant admitted that he gave a false license to the officer who asked him for identification. Defendant explained that he gave the false license because he had 0.25 ounces of marijuana in his pocket. Defendant also admitted that, when the officer walked away, he got out of his car and attempted to flee the scene. Defendant asserted that he had $1,100 in his pocket and that he did not throw anything over the fence before Officer Jones caught up with him. Defendant noted that he was not charged with possession of the 0.25 ounces of marijuana. Defendant stated that, when he was taken to the front of the residence, the two pounds of marijuana was no longer in his vehicle. Defendant asserted that he did not tell Officer Jones that he robbed people.

On cross-examination, Defendant asserted that he stole the two pounds of marijuana from Mr. Merriweather because he argued with Mr. Merriweather. Defendant claimed that he "fronted" the two pounds of marijuana to other individuals, "One-O" and "Greg." Defendant agreed that he fronted the marijuana to One-O and Greg so that they could sell the marijuana. Defendant testified that he was not armed with a gun when he stole the marijuana from Mr. Merriweather. Defendant stated that he stole Mr. Merriweather's watch because "[i]t [was] just right there by the weed" and because Mr. Merriweather made Defendant mad.

The jury found Defendant guilty as charged in counts one, two, three, and six. The State and Defendant stipulated that Defendant had previously been convicted of two counts of aggravated assault, felon in possession of a handgun, and facilitation of aggravated robbery. The jury found Defendant guilty as charged in counts four and five.

- 4 -

*Sentencing Hearing*

The trial court noted that Defendant stipulated at trial that he had previously been convicted of two counts of aggravated assault, felon in possession of a handgun, and facilitation of aggravated robbery. Regarding count one, aggravated robbery, the trial court found that Defendant was a Range II offender. The trial court noted that Defendant had been convicted of prior misdemeanors and admitted to using marijuana. The trial court found that Defendant had a previous history of criminal convictions or criminal behavior, in addition to that needed to establish Defendant's range, *see* Tenn. Code Ann. § 40-35-114(1), and that "he was a leader in the commission of offense involving two or more criminal actors[,]" *see* Tenn. Code Ann. § 40-35-114(2). The trial court noted that Defendant "was the first person into the house, pointed the gun at the victim, Mr. Merriweather, took money from him, his cell phone, his watch, [and] his earrings" and determined that Defendant "was definitely a leader in this home invasion." The trial court found that no mitigating factors applied to Defendant's case.

The trial court ordered the following sentences: fifteen years as a Range II multiple offender on count one, aggravated robbery; eight years as a Range II multiple offender on count two, aggravated burglary; six years as a Range II standard offender with release eligibility after service of 100% of the sentence on count three, employing a firearm during the commission of a dangerous felony; eight years as a Range II multiple offender on count four, convicted felon in possession of a firearm; three years as a Range II multiple offender on count five, convicted felon in possession of a handgun; and eleven months and twenty-nine days on count six, evading arrest.

Regarding sentence alignment, the trial court found that Defendant had committed "violent crimes as a juvenile," had no employment history, and had "committed crimes all [of] his life." The trial court found that Defendant had an extensive history of criminal activity. The trial court also found that Defendant was "a dangerous offender whose behavior indicate[d] little or no regard for human life because of the pistol whipping and his other crimes, [and] no hesitation about committing a crime in which the risk to human life is high." The trial court also "found the circumstances surrounding the commission of this offense [we]re aggravated in that [Defendant] [went] in with this home invasion, pistol whip[ped] this man, [and] call[ed] another person to come in with a gun" and that "confinement for an extended period of time [wa]s necessary to protect society from his unwillingness to lead to productive life, and his resort to criminal activity in furtherance of an anti[-]societal lifestyle[.]" Thus, the trial court ordered Defendant's sentence in count one, aggravated robbery, to be served consecutively to the sentence in count two, aggravated burglary and in count three, employing a firearm during the commission of a felony, for a total effective sentence of twenty-nine years.

The trial court determined that Defendant was not eligible for probation and ordered Defendant to serve his sentence in the Department of Correction.

Defendant filed a timely motion for new trial, which the trial court denied. Defendant now timely appeals his convictions and sentences.

## II. Analysis

### *Sufficiency of the evidence*

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

### *Aggravated robbery*

Defendant asserts that Mr. Merriweather did not identify Defendant as the individual who entered his residence and pointed a gun at him.

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2014). Robbery is aggravated when the robbery is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402(a)(1) (2014). Deadly weapon includes "[a] firearm or anything manifestly designed, made or adapted for the

purpose of inflicting death or serious bodily injury[.]" Tenn. Code Ann. § 39-11-106(a)(5)(A) (2014).

The identity of the perpetrator is "an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Identity may be established with circumstantial evidence alone, and the "jury decides the weight to be given to circumstantial evidence, and [t]he inferences to be drawn from such evidence . . . ." *Id.* (internal quotation marks omitted). The question of identity is a question of fact left to the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

Here, Mr. Merriweather testified that Defendant "came from the side of the house when [he] opened the door and forced [him] in the house." Defendant pointed a black gun with a long clip at Mr. Merriweather and asked where the marijuana was located. When Mr. Merriweather explained that he did not have any marijuana, Defendant hit Mr. Merriweather in the head with the gun. Defendant stole $300 from Mr. Merriweather's pocket, his phone, his earrings, a Michael Kors watch and $900 from a drawer in the bedroom. Mr. Merriweather identified Defendant as the individual who threatened him with a gun and robbed him both in a photographic lineup and at trial. Mr. Merriweather stated that, during the offense, he was "terrified[,]" "scared[,]" and believed that Defendant was going to kill him. This evidence is sufficient for a rational juror to have found beyond a reasonable doubt that Defendant intentionally or knowingly stole property from Mr. Merriweather with a deadly weapon, a gun, and put Mr. Merriweather in fear. Defendant is not entitled to relief on this ground.

*Aggravated burglary*

Defendant argues again that Mr. Merriweather did not sufficiently identify Defendant as the individual who committed the offense. Defendant also contends that Mr. Merriweather's testimony did not sufficiently establish that the offense occurred in a habitation because Mr. Merriweather stated that he was "staying" in the residence but did not establish that he stayed at the residence overnight.

Aggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." Tenn. Code Ann. § 39-14-403(a) (2014). As charged in this case, burglary occurs when a defendant "[e]nters a building and commits or attempts to commit a felony, theft or assault" "without the effective consent of the property owner[.]" Tenn. Code Ann. § 39-14-402(a)(3) (2014). "Habitation" is defined as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons[.]" Tenn. Code Ann. § 39-14-401(1)(A) (2014).

We conclude that Mr. Merriweather's testimony was sufficient to establish that Defendant entered a habitation and committed a theft. Mr. Merriweather stated that he was staying at a residence on Lowell Avenue when the offenses occurred. Mr. Merriweather referred to the residence as "the house" and described the layout of the residence while testifying about the offenses. It was within the purview of the jury to infer that the structure that Defendant entered was a building that was "designed or adapted for the overnight accommodation of persons[.]" *See* Tenn. Code Ann. § 39-14-401(1)(A) (2014). As we noted above, Mr. Merriweather identified Defendant as the individual who threatened him with a gun and robbed him both in a photographic lineup and at trial. Based on its verdict of guilty, the jury clearly credited Mr. Merriweather's identification of Defendant as the individual who entered his home, threatened him with a gun, and stole his personal property, as was its prerogative. Mr. Merriweather's identification of Defendant was sufficient evidence for a rational juror to find that Defendant was the perpetrator of the aggravated robbery. Defendant is not entitled to relief on this ground.

*Firearm convictions*

Defendant argues that "[b]ecause the victim was unable to properly identify . . . [D]efendant, the [S]tate failed to prove the guilt of . . . [D]efendant beyond a reasonable doubt" on counts three, four, and five.

As charged in count three, "[i]t is an offense to employ a firearm during the . . . [c]ommission of a dangerous felony[,]" such as aggravated burglary. Tenn. Code Ann. § 39-17-1324(b)(1),(i)(1)(H) (2014). As charged in count four, "[a] person commits an offense who unlawfully possesses a firearm . . . and . . . [h]as been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon[,]" such as aggravated assault. Tenn. Code Ann. § 39-17-1307(b)(1)(A) (2014); *see* Tenn. Code Ann. § 39-13-102 (2014) (assault is aggravated when it results in serious bodily injury to another, results in the death of another, or involved the use or display of a deadly weapon). A firearm is "any weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use[.]" Tenn. Code Ann. § 39-11-106(a)(11) (2014). As charged in count five, "[a] person commits an offense who possesses a handgun and has been convicted of a felony[.]" Tenn. Code Ann. § 39-17-1307(c)(1) (2014). A handgun is "any firearm with a barrel length of less than twelve inches (12") that is designed, made or adapted to be fired with one (1) hand[.]" Tenn. Code Ann. § 39-11-106(a)(16) (2014).

As we have previously stated, Mr. Merriweather identified Defendant both in a photographic lineup and at trial as the individual who threatened him with a gun and robbed him. Regarding count three, employing a firearm during the commission of a

dangerous felony, Mr. Merriweather testified that Defendant entered his residence with a gun and employed the gun during the burglary and robbery. Regarding counts four and five, the State and Defendant stipulated that Defendant had been convicted previously of two counts of aggravated assault and convicted felon in possession of a handgun in case number 10-02887, and facilitation of aggravated robbery in case number 09-03338. The evidence was sufficient for a rational juror to credit Mr. Merriweather's testimony and find Defendant guilty in counts three, four, and five beyond a reasonable doubt. Defendant is not entitled to relief on this ground.

*Evading arrest*

Defendant argues that the evidence was insufficient to establish the elements of this offense because Officer Jones "d[id] not testify that he was driving a police vehicle, or that he turned on lights or siren, or did anything else that would identify him as a police officer[,]" that Officer Jones was not in uniform, and that "[t]here [wa]s no evidence regarding . . . [D]efendant's state of mind that would indicate that he knew that Officer Jones was a police officer who was attempting to arrest him."

"[I]t is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person[.]" Tenn. Code Ann. § 39-16-603(a)(1)(A) (2014).

Officer Jones received a BOLO alert for a vehicle and individuals involved in a home invasion robbery on Lowell Avenue. He located the vehicle, initiated a traffic stop, and "turned on [his] lights and sirens and let that individual know who was driving that vehicle that [he] was trying to stop them." Defendant stopped the vehicle in a residence's driveway and gave Officer Jones a false identification but then exited the driver's door and ran towards the back of the residence. Defendant attempted to jump over a fence in the backyard and threw his firearm over the fence when Officer Jones apprehended him. Thus, contrary to Defendant's assertion, Officer Jones clearly testified that he activated the lights and sirens on his patrol vehicle. The jury credited Officer Jones's testimony that Defendant had notice that Officer Jones signaled him to stop, as was its prerogative. *See State v. Kerry D. Garfinkle*, No. 01C01-9611-CC-00484, 1997 WL 709477, at *3 (Tenn. Crim. App. Nov. 7, 1997) ("Although defendant claims that he never saw the officers' repeated signals to stop, this was a question of credibility for the jury."). The evidence was sufficient to establish that Defendant knew that Officer Jones was attempting to apprehend him and Defendant exited his vehicle and fled behind the residence. Defendant is not entitled to relief on this ground.

- 9 -

*Consecutive sentencing*

Defendant argues that the trial court failed to make the required findings under *State v. Wilkerson*, 905 S.W.2d 933, 936 (Tenn. 1995) to warrant consecutive sentencing.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts. To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2017); *Bise*, 380 S.W.3d at 706.

In *State v. Pollard*, the Tennessee Supreme Court expanded its holding in *Bise* to trial courts' decisions regarding consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). Any one ground set out in the above statute is "a sufficient basis for the imposition of consecutive sentences." *Id.* at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* (citing Tenn. R. Crim. P. 32(c)(1)).

Tennessee Code Annotated section 40-35-115 sets forth seven different situations in which a trial court may impose consecutive sentencing, including when "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4) (2017); *see Wilkerson*, 905 S.W.2d at 936. Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences . . . reasonably relate to the severity of the offenses committed." *Wilkerson*, 905 S.W.2d at 939. In order to limit the use of the "dangerous offender" category to cases where it is warranted, our supreme court has stated that the trial court must make specific findings about "particular facts" which show that the *Wilkerson* factors apply to the defendant. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Additionally, a trial court "may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is an offender whose record of criminal activity is extensive[.]" Tenn. Code Ann. § 40-35-115(b)(2) (2017).

This factor has been interpreted "to apply to offenders who have an extensive history of criminal convictions and activities, not just to a consideration of the offenses before the sentencing court." *State v. Palmer*, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999).

Here, the trial court ordered partially consecutive sentences based on its findings that Defendant had an extensive history of criminal activity and that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life because of the pistol whipping and his other crimes, no hesitation about committing a crime in which the risk to human life is high." The trial court also "found the circumstances surrounding the commission of this offense [we]re aggravated in that [Defendant] [went] in with this home invasion, pistol whip[ped] this man, [and] call[ed] another person to come in with a gun" and that "confinement for an extended period of time [wa]s necessary to protect society from his unwillingness to lead to productive life, and his resort to criminal activity in furtherance of an anti[-]societal lifestyle[.]" Thus, the trial court clearly set out multiple grounds on which to base its order of consecutive sentencing. While the trial court did not explicitly find that "the consecutive sentences [were] reasonably relate[d] to the severity of the offenses committed[,]" *see Wilkerson*, 905 S.W.2d at 939, the trial court's finding that Defendant had an extensive history of criminal activity is supported by the record and alone is sufficient to support the order of consecutive sentences. *See Pollard*, 432 S.W.3d at 862. The trial court found that Defendant had committed "violent crimes as a juvenile," that Defendant had no employment history, and that he had "committed crimes all [of] his life." Defendant had previously been convicted of two counts of aggravated assault, convicted felon in possession of a handgun, facilitation of aggravated robbery, and prior misdemeanors, and Defendant admitted to using marijuana. Additionally, Defendant stipulated at trial that he had previously been convicted of two counts of aggravated assault, convicted felon in possession of a handgun, and facilitation of aggravated robbery. Thus, the trial court did not abuse its discretion by ordering Defendant to serve his sentence in count one, aggravated robbery, consecutively to count two, aggravated burglary, and to count three, employing a firearm during the commission of a dangerous felony, for a total effective sentence of twenty-nine years. Defendant is not entitled to relief on this ground.

### *Merger of convictions*

Defendant lastly argues that this court should address the issue of merger of count three, employing a firearm during a dangerous felony, count four, convicted felon in possession of a firearm, and count five, convicted felon in possession of a handgun, under plain error review because the convictions violate principles of double jeopardy. Defendant asserts that "[a] single, wrongful act forms the basis for all three of these convictions." The State concedes that counts four and five must be merged.

- 11 -

Defendant did not raise this issue in his motion for new trial and addresses this issue under plain error analysis. However, "the remedy for a double jeopardy violation is not a new trial but a dismissal of a charge or merger of convictions." *State v. Nicholas Keith Phillips*, No. M2013-02705-CCA-R3-CD, 2015 WL 333084, at *8 (Tenn. Crim. App. Jan. 27, 2015) (citing *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997)), *no perm. app. filed*. Therefore, we will conduct a plenary review of this issue on the merits.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, states, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution guarantees "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. Both clauses provide three distinct protections: "(1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012).

With respect to the third category, the double jeopardy prohibition operates to prevent prosecutors and courts from imposing punishment that exceeds that authorized by the legislature. *Id.* at 542. Such single prosecution, multiple punishment claims ordinarily fall into one of two categories: (1) "unit-of-prosecution" or (2) "multiple description" claims. *Id.* at 543. Multiple description claims arise in cases where the defendant had been convicted of multiple criminal offenses under different statutes but alleges that the statutes punish the same offense. *Id.* at 544. Unit-of-prosecution claims arise when the defendant has been convicted of multiple violations of the same statute and asserts that the multiple convictions are for the same offense. *Id.*

When reviewing multiple description cases, courts must determine whether the defendant committed two offenses or only one. *Id.* at 544. To do so, courts apply the test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932). *Blockburger*, 284 U.S. at 304; *Watkins*, 362 S.W.3d at 544. The reviewing court should first determine whether the Tennessee General Assembly expressed an intent to permit or preclude multiple punishments. *Watkins*, 362 S.W.3d at 556. "Where the General Assembly's intent is not clearly expressed, the *Blockburger* test should be applied to determine whether multiple convictions under different statutes punish the 'same offense.'" *Id.* To make this determination, appellate courts must "examin[e] statutory elements of the offenses in the abstract, rather than the particular facts of the case." *State v. Cross*, 362 S.W.3d 512 (Tenn. 2012). A *Blockburger* analysis requires two steps: (1) determine whether the statutory violations arose "from the same act or transaction" and (2) if they did arise from the same act or transaction, determine whether the offenses for which the defendant was

convicted constitute the same offense by comparing the elements of the offenses for which the defendant was convicted. *Id.* at 545. If each offense contains an element that the other does not, the statutes are treated as distinct, and courts presume that the legislature intended that the offenses be punished separately. *Id.* at 545-46. Whether multiple convictions violate the principles of double jeopardy is a mixed question of law and fact that appellate courts review de novo with no presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014).

In *State v. Martin Boyce*, No. W2012-00887-CCA-R3-CD, 2013 WL 4027244, at *14-15 (Tenn. Crim. App. Aug. 6, 2013), *no perm. app. filed*, this court examined whether dual convictions of employing a firearm during the commission of a dangerous felony and being a convicted felon in possession of a handgun violated double jeopardy principles. This court applied the *Blockburger* test and concluded that the convictions arose from the same criminal conduct. *Id.* at *15. Next, this court examined the statutory elements of the two offenses and stated the following:

> Proof of a "prior qualifying conviction" for the offense of employing a firearm is not an element of the offense. Rather, the statute provides that a jury's determination of a prior qualifying conviction is for purposes of sentencing. Tenn. Code Ann. § 39-17-1324(f), g(2), h(2). Employing a firearm during the commission of a dangerous felony is a Class C felony. Tenn. Code Ann. § 39-17-1324(h)(1), (h)(2). If the defendant has no prior felony convictions, the offense is punishable by a mandatory minimum six-year sentence; however, if the defendant has a prior felony conviction, the sentence is a mandatory minimum ten-year sentence. *Id.* Subsection (f) of the statute requires that a jury determination as to a defendant's prior felony conviction be made in a bifurcated hearing where the State is seeking an enhanced sentence under subsection (h)(2). *Id.* § 39-17-1324(f). Therefore, we conclude that the offense of possession of a handgun by a convicted felon requires proof of an element that employing a firearm during the commission of a dangerous felony does not.

*Id.* This court held that the dual convictions of possession of a handgun by a convicted felon and employing a firearm during the commission of a dangerous felony did not violate double jeopardy principles. *Id.* We see no reason to depart from the precedent set by this court in *Martin Boyce*. Therefore, counts four and five do not merge into count three, employing a firearm during the commission of a dangerous felony.

We will apply the multiple description test to determine whether counts four and five should merge. *See Smith*, 436 S.W.3d at 766-68 (applying the multiple description test to determine whether convictions under multiple subsections of the same statute

- 13 -

violated double jeopardy). Regarding counts four and five, we initially conclude that the Tennessee General Assembly did not express intent to either preclude or permit multiple convictions under section 39-17-1307. Titled "Carrying or possession of weapons[,]" section 39-17-1307 does not contain an express provision permitting or prohibiting prosecution for the same criminal conduct under multiple subsections. Therefore, we must apply the two-step test from *Blockburger*.

Applying the *Blockburger* analysis to counts four and five, we conclude that the statutory violations charged in counts four and five arise from the same criminal act. *See Watkins*, 362 S.W.3d at 545. Defendant's convictions in counts four and five are based on Defendant's possession of one handgun during a continuous transaction of criminal activity. Having concluded that counts four and five arise from the same criminal act or transaction, we must determine whether the offenses for which the Defendant was convicted constitute the same offense based on an analysis of the elements. As charged in count four, "[a] person commits an offense who unlawfully possesses a ***firearm*** . . . and . . . [h]as been convicted of a felony crime of ***violence***[,]" based on Defendant's aggravated assault conviction from 2010. Tenn. Code Ann. § 39-17-1307(b)(1)(A) (2014) (emphasis added). As charged in count five, "[a] person commits an offense who possesses a ***handgun*** and has been convicted of a ***felony***[,]" Tenn. Code Ann. § 39-17-1307(c)(1) (2014) (emphasis added), based on Defendant's previous convictions for convicted felon in possession of a handgun from 2012 and facilitation of aggravated robbery from 2010.

In the two subsections at issue, the mens rea is not specified,[1] and the actus reus is the act of possession. *See id.* Additionally, both statutes require the defendant to have been previously convicted of a felony, another essential element. *See id.* Because *Watkins* and its progeny apply the *Blockburger* test with an objective or abstract view, we conclude that the differences between the two subsections, such as firearm and handgun, and a prior felony conviction versus a prior felony conviction of violence, do not constitute separate elements. Additionally, we note that the category of handgun is subsumed within the category of firearm, and the category of a felony of violence is subsumed within the category of a felony. Thus, we conclude that these two offenses do not each have an element that the other does not have. Because these two statutes do not have an element that the other statute does not, Defendant's convictions in counts four and five must merge. On remand, the trial court should merge the Class E felony conviction for convicted felon in possession of a handgun into the Class B felony conviction for convicted felon in possession of a firearm. *See State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993).

---

[1] Because section 39-17-1307 does not specify a mental state, "intent, knowledge or recklessness suffices to establish the culpable mental state." Tenn. Code Ann. §39-11-301.

## III. Conclusion

After a thorough review of the facts and applicable case law, we affirm Defendant's convictions in counts one, two, three, and six and affirm the imposition of partially consecutive sentences. We remand this case for merger of count five, convicted felon in possession of a handgun, into count four, convicted felon in possession of a firearm, to ensure that Defendant is not subjected to double jeopardy.

_____
ROBERT L. HOLLOWAY, JR., JUDGE