IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2024

**STATE OF TENNESSEE v. RICKIE LUMLEY**

**Appeal from the Circuit Court for Dyer County**
No. 22-CR-237          Mark L. Hayes, Judge
_____

**No. W2023-00622-CCA-R3-CD**
_____

After a 2022 bench trial, the trial court convicted the Defendant, Rickie Lumley, of felony evading arrest, and subsequently sentenced him as a Career Offender to twelve years of incarceration. On appeal, the Defendant contends that the evidence is insufficient to support his Class D felony conviction for felony evading arrest because his flight did not create a risk of death or injury to innocent bystanders or other third parties. He contends that his conviction should have only been for a Class E felony. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which TOM GREENHOLTZ, and KYLE A. HIXSON, JJ., joined.

Kendall Stivers Jones (on appeal), Assistant Public Defender – Appellate Division, Franklin, Tennessee, Sean P. Day (at trial), Assistant District Public Defender, Dyersburg, Tennessee, for the appellant, Rickie Lumley.

Jonathan Skrmetti, Attorney General and Reporter; Katherine Orr, Assistant Attorney General; Danny H. Goodman, Jr., District Attorney General; and Timothy J. Boxx, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's failure to stop after law enforcement officers attempted to stop his vehicle. For his actions, a Dyer County grand jury indicted him for one count of evading arrest in a motor vehicle with a risk of death or injury to bystanders and one count of reckless endangerment with a deadly weapon.

The Defendant waived his right to a jury trial, and the trial court held a bench trial during which the parties presented the following evidence: Trooper Grant Montgomery with the Tennessee Highway Patrol testified that he was working on the night of November 29, 2019 at around 9:30 pm when he received a call about a burglary in progress in the Lakewood subdivision area of Dyer County, Tennessee. The dispatcher reported that the vehicle was small and maroon in color and that in it were two white males suspected of participating in the burglary. He responded toward the area when he received information that a vehicle matching the description of the vehicle involved in the burglary was headed towards him.

Trooper Montgomery then saw a small, maroon car, matching the description of the suspect vehicle, travelling towards him. He pulled his vehicle into the path of the maroon vehicle and illuminated his patrol car "take-down" lights. When the vehicle stopped, he pulled in front of the vehicle, within fifteen feet of the vehicle, and activated his blue emergency lights. This, he said, indicated to the driver that he should remain stopped in his vehicle.

The vehicle's driver drove the maroon vehicle around Trooper Montgomery's patrol vehicle and "took off." When the driver did so, he passed within fifteen feet of Trooper Montgomery. He saw that there were two men in the vehicle, both white, one in the driver's seat and one in the passenger seat. The trooper identified a video recording of the incident.

Trooper Montgomery recounted how, after the suspect vehicle pulled away, he began pursuit. He spoke with a Sheriff's Deputy, Deputy Sean Rainey, who told him that the vehicle's tag number was registered to the Defendant. Trooper Montgomery used a database to pull up the Defendant's picture and identified it as being of the man whom he saw driving the suspect vehicle.

Trooper Montgomery said that, while he maintained pursuit of the Defendant's vehicle, county officers were "way ahead" of him on the roadway. He noted that the officers' vehicles were accelerating and changing to different roadways. He estimated their speeds at over seventy miles per hour on a hilly two-lane roadway. Trooper Montgomery said that the Defendant's vehicle was not driving safely. He opined that the Defendant was creating a risk of injury or death to himself, his passenger, other motoring public, and to law enforcement officers involved in trying to apprehend him.

During cross-examination, Trooper Montgomery said that he had not previously seen the Defendant and was not familiar with his appearance.

Deputy Rainey also testified and confirmed Trooper Montgomery's account of these events. He added that, after receiving the call about the burglary, he and Deputy Charlie Clark proceeded with lights and sirens to the address. He saw the suspect vehicle go around

2

Trooper Montgomery's vehicle. He pulled behind the suspect vehicle and obtained the tag information.

Deputy Rainey said he pursued the vehicle for "quite a while" and over a considerable distance spanning from the western end of Dyer County into Crockett County. The deputy's vehicle accelerated up to speeds of 75 miles per hour on an "extremely curvy road" that was hard to travel even at the posted speed limit of 55 miles per hour. At 75 miles per hour, the suspect vehicle crossed the center line multiple times into the oncoming traffic lane. On the straighter section of road, the vehicle increased to 85 miles per hour until the suspect vehicle arrived where Deputy Clark and Deputy Caldwell had the intersection blocked off to prevent drivers or innocent bystanders from entering the intersection and being hurt. After making a left-hand turn, the suspect vehicle increased to 95 miles per hour on a two-lane roadway. When the suspect vehicle got on a hilly, four lane road, the speeds increased to 115 miles per hour. The speed of the suspect vehicle was so great that the officer could not negotiate his vehicle safely. He slowed down and lost sight of the suspect vehicle.

He notified dispatch that he had lost sight of the vehicle, and dispatch notified Crockett County. Deputy Rainey contacted Trooper Montgomery, who informed him that he had seen the suspect and identified the driver as the Defendant.

Deputy Rainey filed warrants against the Defendant. He did not file burglary charges because his investigation revealed that the Defendant and his passenger were known to someone living in the burglary complainant's home.

During cross-examination, Deputy Rainey agreed that, where officers were able to block intersections, they did so to remove those people from the zone of the chase. He also noted that his report indicated "light traffic" and it did not indicate that other vehicles had to get out of the way of the Defendant's vehicle. He agreed that officers eventually found the vehicle in Crockett County in a sporadically populated area. Deputy Rainey also said that law enforcement did not apprehend the Defendant until months after this incident.

Based upon this evidence, the trial court found the Defendant guilty of Class D felony evading arrest. The court noted that there was no allegation that the stop was unlawful. It went on to find that the evidence supported Trooper Montgomery's testimony that he could see the Defendant as he drove past him and subsequently identified him based upon his driver's license photograph. The video evidence also showed that the Defendant had a passenger in the vehicle. The trial court then found:

> The trooper was unable to catch the [D]efendant's vehicle or the pursuing Dyer County Sheriff's Department vehicle, despite engaging in a high-speed pursuit. Both Trooper Montgomery and Officer Rainey have both described the topography of what's been called Highway 182 and

3

Lenox-Navoo Road . . . [both] of which are public roads and are in Dyer County, Tennessee . . . [and] also in Crockett County, Tennessee, where the pursuit ended. Officer Rainey described the extremely high rates of speed of the vehicle at various times. The closing of intersections and the traffic conditions which existed at the time of the pursuit, with speeds reaching anywhere between 75 miles an hour and 115 miles an hour. The [D]efendant's flight created a risk of death or injury to other persons, specifically shown on Highway 412 prior to the [D]efendant reaching Dyersburg. There was also light traffic indicated through the testimony on Highway 412. There was a risk to pursuing law enforcement, so much so that the pursuit was eventually terminated, not only to avoid further risk to the officers, but also to any others on or near the roadways. And certainly, a risk of death or injury to the passenger in the vehicle. And again, it's clear from the video that there is a passenger in the [D]efendant's vehicle at the time it passes Trooper Montgomery's vehicle. The zone of danger theory advanced by the [D]efendant with respect to the lack of risk is really inapplicable to this offense, but it's more applicable to maybe reckless endangerment, where there is, or any offense where there is an imminent danger of death or serious bodily injury. The statute here requires a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties. The video demonstrates and the testimony of Officer Rainey confirms the intentional actions of the [D]efendant.

After a sentencing hearing, the trial court sentenced the Defendant as a Career Offender to twelve years of incarceration.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to support his Class D felony conviction for felony evading arrest, rather than the lesser offense of Class E felony evading arrest, because it did not prove that he created a risk of death or injury to innocent bystanders or other third parties. The State counters that there was "ample evidence" to support the trial court's determination. We agree.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct

4

evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

"It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop."

5

T.C.A. § 39-16-603(b)(1) (2019). As relevant here, an individual "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). An individual's intent may be inferred from the surrounding facts and circumstances. *State v. Lowery*, 667 S.W.2d 52, 57 (Tenn. 1984).

A violation of subsection (b) of Tennessee Code Annotated section 39-16-603 is a Class E felony. If, however, the flight or attempt to elude creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties, a violation of subsection (b) is a Class D felony. T.C.A. § 39-16-603 (d)(2)(A)-(B).

In *State v. Cross*, the Tennessee Supreme Court discussed an overly narrow interpretation of Tennessee Code Annotated section 39-16-603(b). 362 S.W.3d 512, 523-25 (Tenn. 2012). The Defendant in that case conceded that he passed two other motorists in no passing zones on blind curves but insisted that the record lacked evidence that these two motorists had any reaction when he passed them or that he was speeding when he passed them. *Id.* He contended that the only threat he posed while trying to elude capture was to oncoming traffic and that the evidence was insufficient to prove that his actions in evading arrest created a risk of death or injury to innocent bystanders because the record contained no testimony of oncoming traffic on the roads where the chase occurred. *Id.*

The *Cross* Court stated:

In *State v. Turner*, 193 S.W.3d 522 (Tenn. 2006), the defendant, while attempting to evade a pursuing police officer, passed a vehicle in a no-passing zone, ignored a four-way stop sign, and drove through two red lights before coming to a stop in his own driveway. *State v. Turner*, 193 S.W.3d at 524. In response to an argument similar to the one made by Mr. Cross in this case, we stated that "[b]y the plain language of the statute, proof of actual injury or death is not necessary for conviction. All that need be shown is that the defendant evaded arrest and that in so doing, he created the risk of death or injury." *State v. Turner*, 193 S.W.3d at 525. Based on this interpretation of Tenn. Code Ann. § 39-16-603, we held that "[c]learly, the defendant created a risk of death or injury to every driver . . . in his proximity as he operated his vehicle heedless of the traffic signals. We conclude . . . that a reasonable juror could have found that the defendant's conduct placed innocent bystanders or third parties at risk." *State v. Turner*, 193 S.W.3d at 525.

In his efforts to evade Deputy Smith on Keith Valley Road, Mr. Cross passed two other vehicles on blind curves. During the chase, Mr. Cross was driving at speeds of eighty to ninety miles per hour on stretches of road with a forty-five mile per hour speed limit. Taking the strongest legitimate view

6

of the evidence in favor of the State and drawing all reasonable inferences in the State's favor, we cannot agree with Mr. Cross's suggestion that he was not speeding when he passed these two vehicles on Keith Valley Road. Mr. Cross was also being pursued by Deputy Smith with his emergency lights flashing and siren blaring. We have little difficulty in concluding that a rational jury could find that Mr. Cross's flight from the police created "a risk" of injury to the drivers of these other vehicles. *See* Tenn. Code Ann. § 39-16-603(b)(3). Accordingly, the evidence is sufficient to support his conviction under Tenn. Code Ann. § 39-16-603.

*Cross*, 362 S.W.3d at 524.

Viewing the evidence in the case under submission in the light most favorable to the State, we conclude that the State presented sufficient evidence for the trier of fact to find beyond a reasonable doubt that the Defendant's flight created a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties. First, he created a risk to his passenger. Our supreme court has stated that innocent bystanders or third parties are considered "persons other than the defendant him or herself and the officer giving the signal to stop." *Cross*, 362 S.W.3d at 521. The Defendant's passenger, as seen in the video footage and by Trooper Montgomery, is an innocent bystander for purposes of this statute.

The Defendant also created a risk of death or injury to pursuing law enforcement officers. Trooper Montgomery was the officer giving the signal to stop that the Defendant disregarded. Deputy Rainey joined in the pursuit, and reached speeds of 115 miles per hour on two-lane and four-lane roadways. He terminated his pursuit because he could not safely keep control of his vehicle. Further, he indicated that other officers blocked intersections to lessen, but not eliminate, the risk to other innocent bystanders who may enter those intersections, as the Defendant was not slowing down at the intersections. Those officers, who were near the path of pursuit, were placed in unnecessary danger and at risk of injury. Finally, other innocent bystanders at or near the path of pursuit were also placed at risk of injury by the Defendant's actions.

Accordingly, we conclude that the evidence is sufficient to support the Defendant's conviction for Class D felony evading arrest. He is not entitled to relief on this issue.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____

7

ROBERT W. WEDEMEYER, JUDGE